# EX. 1

**FILED**
**04-13-2021**
**CIRCUIT COURT**
**DANE COUNTY, WI**
**2021CV000854**
**Honorable Stephen E Ehlke**
**Branch 15**

STATE OF WISCONSIN        CIRCUIT COURT        DANE COUNTY

---

**TAMMY SCHMIDT,**
on behalf of herself and all others
similarly situated
P.O. Box 471
St. Nazianz, WI 54232                              Case No.: 21-cv-
                                                   Case Code: 30303

          Plaintiff,

v.

                                                   **JURY TRIAL DEMANDED**

**HEARTLAND FINANCIAL USA, INC.**
c/o Registered Agent
Corporation Service Company
8040 Excelsior Drive, Suite 400
Madison, WI 53717

          Defendant.

---

**SUMMONS**

---

THE STATE OF WISCONSIN, To each person named above as a Defendant:

    You are hereby notified that the Plaintiff named above has filed a lawsuit or

other legal action against you. The Complaint, which is attached, states the nature

and basis of the legal action.

    Within forty-five (45) days of receiving this Summons, you must respond with

a written answer, as that term is used in chapter 802 of the Wisconsin Statutes, to

the Complaint. The court may reject or disregard an answer that does not follow the

requirements of the statutes. The answer must be sent or delivered to the court,

whose address is Dane County Courthouse, 215 South Hamilton Street, Madison, WI

53703, and to Hawks Quindel, S.C., Plaintiff's attorneys, whose address is 409 East Main Street, Madison, WI 53703. You may have an attorney help or represent you.

If you do not provide a proper answer within forty-five (45) days, the court may grant judgment against you for the award of money or other legal action requested in the Complaint, and you may lose your right to object to anything that is or may be incorrect in the Complaint. A judgment may be enforced as provided by law. A judgment awarding money may become a lien against any real estate you own now or in the future, and may also be enforced by garnishment or seizure of property.

Dated this 13th day of April, 2021.

**HAWKS QUINDEL, S.C.**
*Attorneys for Plaintiff and the putative class*


By:  */s/ Nicholas E. Fairweather*
Nicholas E. Fairweather, State Bar No.: 1036681
Email: nfairweather@hq-law.com
409 East Main Street
Post Office Box 2155
Madison, Wisconsin 53701-2155
Telephone: (608) 257-0040
Facsimile: (608) 256-0236

**KALIEL PLLC**
Jeffrey Kaliel*
Email: jkaliel@kalielpllc.com
Sophia Gold*
Email: sgold@kalielpllc.com
1875 Connecticut Avenue NW, 10th Floor
Washington, DC 20009
Telephone: (202) 300-4783

* *Pro hac vice* application to be filed

*Attorneys for Plaintiff and the putative class*

FILED
04-13-2021
CIRCUIT COURT
DANE COUNTY, WI
2021CV000854
Honorable Stephen E
Ehlke
Branch 15

STATE OF WISCONSIN     CIRCUIT COURT     DANE COUNTY

**TAMMY SCHMIDT,**
on behalf of herself and all others
similarly situated
P.O. Box 471
St. Nazianz, WI 54232

        Plaintiff,

v.

**HEARTLAND FINANCIAL USA, INC.**
c/o Registered Agent
Corporation Service Company
8040 Excelsior Drive, Suite 400
Madison, WI 53717

        Defendant.

Case No.: 21-cv-
Case Code: 30303

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff, Tammy Schmidt ("Plaintiff"), on behalf of herself and all persons similarly situated, alleges the following based on personal knowledge as to allegations regarding herself and on information and belief as to others.

### NATURE OF THE ACTION

1.    Plaintiff brings this action on behalf of herself and a class of all similarly situated consumers against Defendant, Heartland Financial USA, Inc. ("Heartland" or "Defendant"), arising from Heartland's routine practice of assessing two or more non-sufficient funds fees ("NSF Fees") and overdraft fees ("OD Fees") on a single transaction.

2.      Defendant's improper scheme to extract funds from accountholders has victimized Plaintiff and thousands of other similarly situated consumers. Unless enjoined, Defendant will continue to engage in this scheme and continue to cause substantial injury to its consumers.

3.      Plaintiff and other Heartland customers have been injured by the Bank's practices. On behalf of herself and the putative class, Plaintiff seeks damages, restitution and injunctive relief.

## PARTIES, JURISDICTION, AND VENUE

4.      Plaintiff, Tammy Schmidt, is a citizen and resident of St. Nazianz, Wisconsin and a Wisconsin Bank & Trust accountholder.

5.      Defendant, Heartland Financial USA, Inc. owns several banks throughout the country including, but not limited to, Arizona Bank & Trust, Bank of Blue Valley, Citywide Banks, DB&T, FirstBank & Trust, Illinois Bank & Trust, Minnesota Bank & Trust, New Mexico Bank & Trust, Premier Valley Bank, Founders Community Bank, Yosemite Bank, Rocky Mountain Bank, and Wisconsin Bank & Trust (collectively, the "Heartland Banks"). The disclosures amongst Heartland's affiliate banks are uniform and put forth by Heartland on behalf of its affiliates. Heartland has $17 billion in assets and has its principal place of business in Iowa.

6.      This Court has original, subject matter jurisdiction of this action under Wis. Stat. § 801.04.

7.      Venue is proper in this county pursuant to Wis. Stat. § 801.50 because Heartland does substantial business here.

## BACKGROUND FACTS

### HEARTLAND BANK CHARGES MORE
### THAN ONE NSF FEE ON THE SAME ITEM

8.    Prior to July of 2020, Heartland's Account Documents, allowed it to charge a *single* NSF Fee or a *single* overdraft fee ("OD Fee") when an "item" is returned for insufficient funds or paid despite insufficient funds.

9.    After July 2020, for the first time, Heartland amended its Account Documents to inform accountholders that they may incur an NSF fee for each "presentment" of an item.

10.    While Heartland's disclosures changed, its practices didn't. Heartland breached its Account Documents with its accountholders by charging more than one NSF Fee on the same item, since its contract explicitly stated—and reasonable consumers understand—that the same item can only incur a single NSF or OD Fee.

11.    Heartland's abusive practices are not standard within the financial services industry. Indeed, major banks like JP Morgan Chase—the largest consumer bank in the country—charge one NSF Fee per item, even if that item is resubmitted for payment multiple times. And while some other banks engage in the same practices as Heartland, they clearly disclose those charges in the deposit agreements with their customers.

12.    Heartland's Account Documents do not say that Heartland repeatedly charges customers multiple NSF fees on a single item. To the contrary, the Account Documents indicate it will only charge a single NSF Fee or OD Fee on an item.

3

### A.     Plaintiff's Experience.

13.     In support of her claims, Plaintiff offers examples of fees that should not have been assessed against her checking account. As alleged below, Heartland: (a) reprocessed previously declined electronic transactions that they made; and (b) charged an additional fee upon reprocessing.

14.     As examples, in December 2017, September 2018, December 2018, and on other occasions,  Plaintiff was charged multiple fees on the same payment when it was reprocessed more than once.

15.     Plaintiff understood each payment to be a single item as is laid out in Wisconsin Bank & Trust's contract, capable at most of receiving a single NSF Fee (if Heartland returned it) or a single OD Fee (if Heartland paid it).

16.     Heartland also understood each payment attempt to be a single item, as denoted by the fact that the subsequent payments were marked as RETRY PYMTS on Plaintiff's statements.

### B.     The Imposition of Multiple Fees on a Single Item Violates Heartland's Express Promises and Representations.

17.     Heartland's Account Documents state that Heartland will assess a single fee of $35 for a "returned item" or "transaction" that is returned due to insufficient funds.

18.     The Fee Schedule makes a clear promise:

Overdraft Fees                                                          $35.00
- Overdraft Fee - Nonsufficient Funds
- Returned Item Fee - Nonsufficient Funds

Fees apply to transactions created by check, in-person withdrawal, recurring debit card transactions, or other electronic means. Overdraft fees will not be imposed on ATM withdrawals or one-time debit card items unless the customer has opted in"

Please see attached **Exhibit A**.

19.     The same check or ACH payment is not a new "returned item" or "transaction" each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to resubmit the item.

20.     Even if Heartland reprocesses an instruction for payment, it is still the same item or transaction. Defendant's reprocessing is simply another attempt to effectuate an accountholder's original order or instruction.

21.     Moreover, by expressly linking OD Fees and NSF Fees in the Account Documents, Heartland bolsters the reasonable assumption that only a single fee can be assessed on an item. Here's why: For an item charged an "overdraft fee" and thus paid into overdraft, there is no chance it can be subject to reprocessing and thus no chance it could be subject to a second or third fee, since it has already been paid. No reasonable contract reading could allow the other fee mentioned in the disclosure—the NSF Fee—to be treated so differently and assessed two or three times on the same item.

22.     The Account Documents described above never discuss a circumstance where Heartland may assess multiple NSF or OD Fees for an item that was returned for insufficient funds and later reprocessed one or more times and returned again.

5

23.     Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same transaction will be treated as the same "returned item" or "transaction," which Defendant will either pay (resulting in an overdraft item) or return (resulting in a returned item) when it decides there are insufficient funds in the account. Nowhere does Heartland disclose that it will treat each reprocessing of a check or ACH payment as a separate item, subject to additional fees, nor do Heartland customers ever agree to such fees.

24.     Customers reasonably understand, based on the language of Heartland's Account Documents, that Defendant's reprocessing of checks or ACH payments are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger additional NSF Fees. In other words, it is always the same item.

25.     For the first time ever in July 2020, Heartland amended its Fee Schedule to state that accountholders may incur multiple fees if the same item is presented multiple times:

| Overdraft Fees | $35.00 |
|---|---|
| • Overdraft Fee - Nonsufficient Funds | |
| • Returned Item Fee - Nonsufficient Funds per item per presentment | |

Please see attached **Exhibit B**.

26.     As Heartland discovered by July 2020, other banks like Heartland that employ this abusive multiple-fee practice know how to plainly and clearly disclose it. Indeed, other banks and credit unions that do engage in this abusive practice disclose it expressly to their accountholders—something Heartland did not do until recently.

27.     For example, First Hawaiian Bank engages in the same abusive practices as Heartland, but at least discloses it in its online banking agreement, in all capital letters, as follows:

> YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A RETURNED ITEM FOR PAYMENT AND THAT **MULTIPLE FEES MAY BE CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**.[1]

28.     Klein Bank similarly states in its online banking agreement:

> [W]e will charge you an NSF/Overdraft Fee each time: (1) a Bill Payment (electronic or check) is submitted to us for payment from your Bill Payment Account when, at the time of posting, your Bill Payment Account is overdrawn, would be overdrawn if we paid the item (whether or not we in fact pay it) or does not have sufficient available funds; or (2) we return, reverse, or decline to pay an item for any other reason authorized by the terms and conditions governing your Bill Payment Account. **We will charge an NSF/Overdraft Fee as provided in this section regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the bill payment.**[2]

---

[1]  *Terms and Conditions of FHB Online Services*, First Hawaiian Bank 40, https://www. fhb.com/ en/assets/File/Home_Banking/FHB_Online/Terms_and_Conditions_of_FHB_Online_Services_RXP1. pdf (last accessed September 25, 2019) (emphasis added).

[2]  *Consumer and Small Business Online Access Agreement*, Klein Bank ¶ H, https://www.kleinbankonline.com/bridge/disclosures/ib/disclose.html (last accessed September 25, 2019) (emphasis added).

29.    Central Pacific Bank, a leading bank in Hawaii, states in its Fee Schedule under the "MULTIPLE NSF FEES" subsection:

> Items and transactions (such as, for example, checks and electronic transactions/payments) returned unpaid due to insufficient/non-sufficient ("NSF") funds in your account, may be resubmitted one or more times for payment, and a $32 fee will be imposed on you each time an item and transaction resubmitted for payment is returned due to insufficient/nonsufficient funds.[3]

30.    BP Credit Union likewise states: "We may charge a fee each time an item is submitted or resubmitted for payment; therefore, you may be assessed more than one fee as a result of a returned item and resubmission(s) of the returned item."[4]

31.    Regions Bank likewise states:

> If an item is presented for payment on your account at a time when there is an insufficient balance of available funds in your account to pay the item in full, you agree to pay us our charge for items drawn against insufficient or unavailable funds, whether or not we pay the item. If any item is presented again after having previously been returned unpaid by us, you agree to pay this charge for each time the item is presented for payment and the balance of available funds in your account is insufficient to pay the item.[5]

---

[3]   *Miscellaneous Fee Schedule*, Central Pacific Bank 1 (March 4, 2021), https://www.cpb.bank/media/2776/fee-001.pdf.

[4]   *Membership and Account Agreement*, BP Federal Credit Union, ¶ 14(a), https://www.bpfcu.org/images/docs/membership-agreement.pdf (last accessed March 2, 2021).

[5]   *Deposit Agreement*, Regions Bank, ¶ 19, https://www.regions.com/-/media/pdfs/terms/Deposit-Agreement.pdf?revision=89ba3f19-6503-434b-8c33-e6ca0cb7f717&la=en&hash=B8A7EC6CD761AF127881AD212CC231E1 (last accessed March 2, 2021).

32.     First Financial Bank states, "Merchants or payees may present an item multiple times for payment if the initial or subsequent presentment is rejected due to insufficient funds or other reason (representment). Each presentment is considered an item and will be charged accordingly."[6]

33.     Andrews Federal Credit Union states:

You understand and agree that a merchant or other entity may make multiple attempts to resubmit a returned item for payment. Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to use for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item. When we charge a fee for NSF items, the charge reduces the available balance in your account and may put your account into (or further into) overdraft.[7]

34.     Consumers Credit Union states:

Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.[8]

---

[6]  *Special Handling/Electronic Banking Disclosures of Charges*, First Financial Bank 2 (Aug. 2018), https://www.bankatfirst.com/content/dam/first-financial-bank/eBanking_Disclosure_of_Charges.pdf.

[7]  *Terms and Conditions*, Andrews Federal Credit Union (August 2020), ¶ 6, https://www.andrewsfcu.org/AndrewsFCU/media/Documents/Terms-and-Conditions_Aug-2020.pdf (last accessed March 2, 2021).

[8]  *Member Services Guide*, Consumers Credit Union, ¶ 11a, https://www.myconsumers.org/docs/default-source/default-document-library/ccu_membership_booklet_complete.pdf?sfvrsn=6 (last accessed March 2, 2021).

9

35.     Wright Patt Credit Union states:

Consequently, because we may charge a service fee for an NSF item each
time it is presented, we may charge you more than one service fee for
any given item. Therefore, multiple fees may be charged to you as a
result of a returned item and represented regardless of the number of
times an item is presented or represented to us for payment, and
regardless of whether we pay the item or return, reverse, or decline to
pay the item.[9]

36.     Railroad & Industrial Federal Credit Union states:

Consequently, because we may charge an NSF fee for an NSF item each
time it is presented, we may charge you more than one NSF fee for any
given item. Therefore, multiple fees may be charged to you as a result of
a returned item and resubmitted to us for payment, and regardless of
whether we pay the item or return, reverse, or decline to pay the item.[10]

37.     Partners 1st Federal Credit Union states:

Consequently, because we may charge a fee for an NSF item each time
it is presented, we may charge you more than one fee for any given item.
Therefore, multiple fees may be charged to you as a result of a returned
item and resubmission regardless of the number of times an item is
submitted or resubmitted to us for payment, and regardless of whether
we pay the item or return, reverse, or decline to pay the item.[11]

---

[9]     *Important Account Information*, Wright Patt Credit Union, ¶ 6.1, https://www.wpcu.coop/en-us/PDFDocuments/Important%20Account%20Information%20Disclosure%20-%20WPCU.pdf (last accessed March 2, 2021).

[10]     *Important Account Information for Our Members*, Railroad & Industrial Federal Credit Union (August 1, 2019), p. 2, https://www.rifcu.org/Documents/Disclosures/Account-Terms-Conditions.aspx (last accessed March 2, 2021).

[11]     *Consumer Membership and Account Agreement*, Partners 1st Federal Credit Union (September 15, 2019), p. 11, https://s3.us-east 1.amazonaws.com/assets.partners1stcu.org/uploads/PDFs/Consumer_Account_Agreement.pdf. (last accessed March 2, 2021).

38.     Members First Credit Union states:

We reserve the right to charge an Non-Sufficient Funds Fee (NSF Fee) each time a transaction is presented if your account does not have sufficient funds to cover the transaction at the time of presentment and we decline the transaction for that reason. **This means that a transaction may incur more than one Non-Sufficient Funds Fee (NSF Fee) if it is presented more than once** . . . we reserve the right to charge a Non-Sufficient Funds (NSF Fee) for both the original presentment and the representment [.][12]

39.     Community Bank, N.A. states:

We cannot dictate whether or not (or how many times) a merchant will submit a previously presented item. You may be charged more than one Overdraft or NSF Fee if a merchant submits a single transaction multiple times after it has been rejected or returned.[13]

40.     RBC Bank states:

We may also charge against the Account an NSF fee for each item returned or rejected, including for multiple returns or rejections of the same item.[14]

41.     Diamond Lakes Credit Union states:

Your account may be subject to a fee for each item regardless of whether we pay or return the item. We may charge a fee each time an item is submitted or resubmitted for payment; therefore, you may be assessed more than one fee as a result of a returned item and resubmission(s) of the returned item.[15]

---

[12]     *Membership and Account Agreement*, Members First Credit Union, ¶ 14(a), http://www.membersfirstfl.org/files/mfcufl/1/file/Membership_and_Account_Agreement.pdf (last accessed March 2, 2021).

[13]     *Community Bank, N.A., Overdraft and Unavailable Funds Practices Disclosure*, p. 5, https://cbna.com/u/header/2019-Overdraft-and-Unavailable-Funds-Practices-Disclosure.pdf (last accessed March 2, 2021).

[14]     *Service Agreement for Personal Accounts*, RBC Bank, p. 13, https://www.rbcbank.com/siteassets/Uploads/pdfs/Service-Agreement-for-Personal-Accounts.pdf (last accessed March 2, 2021).

[15]     *Terms and Conditions, Membership and Account Agreement*, Diamond Lakes Credit Union, ¶ 14(a), https://www.diamondlakesfcu.org/termsconditions.html (last accessed March 2, 2021).

42. Parkside Credit Union states:

If the Credit Union returns the item, you will be assessed an NSF Fee. Note that the Credit Union has no control over how many times an intended payee may resubmit the same check or other item to us for payment. In the event the same check or other item is presented for payment on more than one occasion, your account will be subject to an additional charge on each occasion that the item is presented for payment. There is no limit to the total fees the Credit Union may charge you for overdrawing your account.[16]

43. In the Account Documents in effect at the time the relevant transactions occurred, Heartland provided no such disclosure, and in so doing, breached its contracts with accountholders, engages in bad faith conduct, and deceives its accountholders

## C. The Imposition of Multiple NSF Fees on a Single Item Breaches Heartland's Duty of Good Faith and Fair Dealing.

44. Parties to a contract are required not only to adhere to the express conditions in the contract, but also to act in good faith when they are vested with a discretionary power over the other party. In such circumstances, the party with discretion is required to exercise that power and discretion in good faith. This creates an implied promise to act in accordance with the parties' reasonable expectations and

---

[16] *Membership and Account Agreement*, Parkside Credit Union, ¶ K, https://www.parksidecu.org/_/kcms-doc/1043/44277/Membership-and-Account-Agreement.pdf?__cf_chl_captcha_tk__=add6ebea42df3685074decd4b16c1f86a8369dc9-1580434763-0-AfXmB7FcyYTqzK9oMNbMSKM6k5fnKS5Xf-z7p3Tv-Pt951tDs7wM8yaaIV06w718t2nomyWR1Q8COwgpfgE07FJWZUeFkJN6lxbXDZG1SvidTWhYm9l85AbCd5afw2imyGdtdzKhXl9bQ9TYkjOlTVM4w8OFJOtE3wVIHrEITnQnSfoR5mZxM5O0bu4f_FHoHiJj0XsjNkVoGblk0-lti6-gMn-Wcu_o87SGQW6dOUF2i6rHGiM_CkdI-ULanKI2NS3KlhkYAuNatN9Jdwr7Plc6oJozMbZQeczuO7VlbRnuCFD0tjzkw1lsnof7uaRvLRAkfKYi3wh0tUU1c_Y6N4aH1qN8SPftOn8TYJHO7OoILvpMfamNTqv_djpbUl3GVA (last accessed March 2, 2021).

means that Heartland is prohibited from exercising its discretion to enrich itself and gouge its customers. Indeed, Heartland has a duty to honor transaction requests in a way that is fair to Plaintiff and its other customers and is prohibited from exercising its discretion to pile on ever greater penalties. Here—in the adhesion agreements Heartland foisted on Plaintiff and its other customers—Heartland has provided itself numerous discretionary powers affecting customers' bank accounts. But instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, Defendant abuses that discretion to take money out of consumers' accounts without their permission and contrary to their reasonable expectations that they will not be charged multiple fees for the same transaction.

45.    Heartland exercises its discretion in its own favor—and to the prejudice of Plaintiff and its other customers—when it defines "item" in a way that directly leads to more NSF Fees. Further, Heartland abuses the power it has over customers and their bank accounts and acts contrary to their reasonable expectations under its Account Documents. This is a breach of Heartland's implied covenant to engage in fair dealing and act in good faith.

46.    By exercising its discretion in its own favor—and to the prejudice of Plaintiff and other customers—by charging more than one NSF Fee on a single item, Heartland breaches the reasonable expectation of Plaintiff and other customers and in doing so violates the implied covenant to act in good faith.

13

47.     It was bad faith and totally outside Plaintiff's reasonable expectations for Heartland to use its discretion to assess two or three NSF Fees for a single attempted payment.

## CLASS ACTION ALLEGATIONS

48.     <u>Description of the Class</u>: Plaintiff brings this class action pursuant to Wis. Stat. § 803.08 on behalf of herself and the classes of persons ("the Class") defined as follows:

> a.     All consumers who, during the applicable statute of limitations up until July 2020, were charged multiple fees on the same item by any of the Heartland Banks.
>
> b.     All consumers in the state of Wisconsin who, during the applicable statute of limitations up until July 2020, were charged multiple fees on the same item by any of the Heartland Banks (Wisconsin subclass).

49.     Excluded from the Class are Heartland's officers, directors, affiliates, legal representatives, employees, successors, subsidiaries, and assignees. Also excluded from the Class are any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff. Plaintiff reserves the right to modify or amend the class definition upon receiving meaningful discovery.

50.     <u>Numerosity</u>: The members of the proposed Class are so numerous that individual joinder of all members is impracticable. The exact number and identities of the members of the proposed Class are unknown at this time but can be ascertained only through appropriate discovery. Based on information and belief, Plaintiff estimates the number of class members to be in the thousands.

51. <u>Common Questions of Law and Fact Predominate</u>: There are many questions of law and fact common to Plaintiff and the Class, and those questions substantially predominate over any questions that may affect individual Class members. Common questions of law and fact include whether:

a. Whether Heartland charged multiple fees on a single item;

b. Whether Heartland breached its contract;

c. The proper method or methods by which to measure damages; and

d. The declaratory and injunctive relief to which the Class is entitled.

52. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class have been similarly affected by the actions of Heartland.

53. <u>Adequacy of Representation</u>: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex and consumer class action litigation. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so.

54. <u>Superiority of Class Action</u>: Plaintiff and the members of the Class suffered, and will continue to suffer, harm as a result of Heartland's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the Class is impractical. Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts

15

in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the Class members.

55.     <u>Risk of Inconsistent or Varying Adjudication</u>:  Class action treatment is proper, and this action should be maintained as a class action because the risks of separate actions by individual members of the Class would create a risk of: (a) inconsistent or varying adjudications with respect to individual Class members which would establish incompatible standards of conduct for Heartland as the parties opposing the Class; and/or (b) adjudications with respect to individual Class members would, as a practical matter, be dispositive of the interests of other Class members not party to the adjudication or would substantially impair or impede their ability to protect their interests.

56.     <u>Action Generally Applicable to Class as a Whole</u>: Heartland has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## FIRST CLAIM FOR RELIEF
### Breach of Contract Including the Covenant of Good Faith and Fair Dealing
### (On behalf of Plaintiff and all of the Class)

57.     Plaintiff realleges the preceding paragraphs as if fully set forth herein.

58.     Plaintiff and Heartland contracted for checking account services, as embodied in Heartland's Account Documents.

59.     Heartland breached the terms of the contract as explained above.

60.     Plaintiff and members of the putative Class have performed all of the obligations on them pursuant to Defendant's agreements.

61.     Plaintiff and members of the putative Class have sustained monetary damages as a result of each of Defendant's breaches.

62.     Wisconsin law mandates that an implied covenant of good faith and fair dealing govern every contract. The covenant of good faith and fair dealing constrains Defendant's discretion to abuse self-granted contractual powers.

63.     This good faith requirement extends to the manner in which a party employs discretion conferred by a contract.

64.     Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

17

65.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes her conduct to be justified. A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Other examples of violations of good faith and fair dealing are willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

66.     Heartland breached the covenant of good faith and fair dealing as explained herein.

67.     Each of Defendant's actions was done in bad faith and were arbitrary and capricious.

68.     Plaintiff and members of the putative Class have performed all of the obligations imposed on them pursuant to the Account Agreements.

69.     Plaintiff and members of the putative Classes have sustained monetary damages as a result of each of Defendant's breaches of the covenant of good faith and fair dealing.

## SECOND CLAIM FOR RELIEF
## VIOLATION OF WIS. STAT. § 100.18
### (On Behalf of Plaintiff and the Class)

70.     Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

71.     Defendant made representations to Plaintiff and members of the putative Class with the intent to induce an obligation, i.e., the opening of an account with a Heartland Bank.

18

72. The representations by Defendant, as stated above, were untrue, deceptive, or misleading.

73. Plaintiff and members of the putative Class did not discover Defendant's untrue, deceptive, or misleading representations until after they had opened accounts and Defendant had assessed multiple fees for single "items" or transactions.

74. Defendant's misrepresentations materially caused pecuniary losses to Plaintiff and members of the putative Class.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, respectfully requests that the Court:

a. Certify this case as a class action, designating Plaintiff as class representative and designating the undersigned as Class Counsel;

b. Award Plaintiff and the Class actual damages in an amount to be proven at trial;

c. Award Plaintiff punitive damages in an amount to be proven at trial;

d. Award Plaintiff and the Class restitution in an amount to be proven at trial;

e. Award Plaintiff and the Class pre- and post-judgment interest in the amount permitted by law;

f. Award Plaintiff and the Class their attorneys' fees and costs as permitted by law;

g. Enjoin Heartland from engaging in the practices outlined herein;

h.   Grant Plaintiff and the Classes a trial by jury;

i.   Grant leave to amend these pleadings to conform to evidence produced in discovery and at trial; and

j.   Grant such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, and all others similarly situated, hereby demand a trial by jury on all issues in this Class Action Complaint that are so triable.

Dated this 13th day of April, 2021.

**HAWKS QUINDEL, S.C.**
*Attorneys for Plaintiff and the putative class*


By:   */s/ Nicholas E. Fairweather*
Nicholas E. Fairweather, State Bar No.: 1036681
Email: nfairweather@hq-law.com
409 East Main Street
Post Office Box 2155
Madison, Wisconsin 53701-2155
Telephone: (608) 257-0040
Facsimile: (608) 256-0236

**KALIEL PLLC**
Jeffrey Kaliel*
Email: jkaliel@kalielpllc.com
Sophia Gold*
Email: sgold@kalielpllc.com
1875 Connecticut Avenue NW, 10th Floor
Washington, DC 20009
Telephone: (202) 300-4783

* *Pro hac vice* application to be filed

*Attorneys for Plaintiff and the putative class*

20

FILED
04-13-2021
CIRCUIT COURT
DANE COUNTY, WI
2021CV000854
Honorable Stephen E Ehlke
Branch 15

# Exhibit A

**WISCONSIN**
BANK & TRUST™

Personal Account Fee Schedule
Effective 8.1.18

| | | | | |
|---|---|---|---|---|
| Account Closing (Within 90 days of opening) | $25.00 | | Returned Statement (per month) | $10.00 |
| Inactive Acct (after 6 months) if balance is less than $10 | N/A | | Safe Deposit Box - Drilling/Pulling (minimum) | $150.00 |
| Account Research/Balancing - per 30 min. | $12.50 | | Safe Deposit Inventory (hour) | $50.00 |
| Account Research/Item Copy | $5.00 | | Safe Deposit Box - Late Payment Fee | $10.00 |
| Account Transfers - Manual Loan Payment | $10.00 | | Safe Deposit Box - Replacement Key | $25.00 |
| Account Transfers - Manual | No Charge | | Snapshot Statement | $5.00 |
| Account Transfers - Telephone Banking | No Charge | | Stop Payment | $35.00 |
| ACH Reclamations (per item) | N/A | | Subpoena Responses (per hour) | N/A |
| Additional/Duplicate Statement | $5.00 | | **Online Banking** | |
| ATM Non Proprietary Usage (Exempt if in Network) | $2.50 | | Online and Mobile Banking | No Charge |
| Canadian Deposited Items | $6.00 | | Online Retail Bill Pay | No Charge |
| Cashiers Check Purchase | $10.00 | | Account Transfers Online Banking | No Charge |
| Chargeback Fee - Canadian | $15.00 | | **Walk In/Call in Wires** | |
| Chargeback Fee | $10.00 | | Wire In-Domestic | $12.00 |
| Collection Items - Incoming/Outgoing | $27.50 | | Wire In-International USD | $15.00 |
| Copy Machine Use - per page | $2.00 | | Wire In-International FX | $15.00 |
| Counter Checks - each | $1.00 | | Wire Out Domestic-Repetitive | $25.00 |
| Coupon Collection Per Envelope | $20.00 | | Wire Out Domestic-Non Rep | $30.00 |
| Debit Card Replacement | $12.00 | | Wire Out Intl-Repetitive USD | $40.00 |
| Debit Card Rush Order | $75.00 | | Wire Out Intl-NonRep USD | $50.00 |
| Dormant Account | N/A | | Wire Out Intl-Repetitive FX | $35.00 |
| Escheatment/Abandoned Account | N/A | | Wire Out Intl-NonRep FX | $45.00 |
| Excessive Withdrawal Fee Per Item | $15.00 | | | |
| External Transfer Cancellation | $5.00 | | | |
| External Transfer Change | $5.00 | | | |
| External Transfer Set Up | $5.00 | | | |
| Fax - Incoming/Outgoing - per page | $2.00 | | | |
| Foreign Check Collection Fee | $50.00 | | | |
| Foreign Currency - per order | $22.00 | | | |
| Foreign Currency Exchange-Customers Only (Plus Postage) | $22.00 | | | |
| Foreign Draft | $50.00 | | | |
| Garnishment/Levy Fee | $100.00 | | | |
| International Service Assesment Fee with currency conversion (All Cards) | 3.00% | | | |
| International Service Assesment Fee without currency conversion (All Cards) | 3.00% | | | |
| IRA Annual Fee (Plans <$500) | $25.00 | | | |
| IRA Transfer/Closure | $50.00 | | | |
| Medallion/Signature Guarantee | $25.00 | | | |
| Overdraft Fees | $35.00 | | | |

- Overdraft Fee - Nonsufficient Funds
- Returned Item Fee - Nonsufficient Funds

Fees apply to transactions created by check, in-person withdrawal, recurring debit card transactions, or other electronic means. Overdraft fees will not be imposed on ATM withdrawals or one-time debit card items unless the customer has opted in*

Overdraft Privilege: The total of the discretionary overdraft privilege (negative) balance, including any and all bank fees and charges, and interest charges is due and payable upon demand. Approval of payment of overdrafts by the bank on consumer accounts in good standing is only a discretionary courtesy, and not a right or obligation.

For Consumer Accounts - No fee will be charged when the account is overdrawn five ($5.00) dollars or less. Overdraft fees are assessed on up to five items per day, with the maximum not to exceed $175.

| | |
|---|---|
| Overdraft Transfer (via another deposit account) | $10.00 |

Member FDIC

Case 2021CV000854   Document 3   Filed 04-13-2021   Page 1 of 51

FILED

04-13-2021

CIRCUIT COURT

DANE COUNTY, WI

2021CV000854

Honorable Stephen E
Ehlke

Branch 15

# Exhibit B



# Agreements, Disclosures and Account Terms

## Consumer Deposit Accounts

**This booklet contains information regarding your Wisconsin Bank & Trust consumer deposit accounts. Please spend some time reviewing the agreements, disclosures and account terms that will govern your accounts effective February 1, 2021.**

**Contact your Banker or the Customer Care Center at 877.280.1855 with questions or concerns.**

EQUAL HOUSING LENDER | MEMBER FDIC

# Consumer Deposit Accounts

# Table of Contents

**TRUTH IN SAVINGS DISCLOSURES** ............................................... **PAGE 1**

**PERSONAL ACCOUNT FEE** ......................................................... **PAGE 14**

**OVERDRAFT PRIVILEGE** ............................................................ **PAGE 15**

**PERSONAL DEPOSIT ACCOUNT AGREEMENT** ........................... **PAGE 17**

**REGULATION CC FUNDS AVAILABILITY DISCLOSURE** ................ **PAGE 39**

**SUBSTITUTE CHECK POLICY DISCLOSURE** .................................. **PAGE 40**

**ELECTRONIC TRANSACTION DISCLOSURE** .................................. **PAGE 41**

**PRIVACY NOTICE** ..................................................................... **PAGE 46**



# New Customer $350 Bonus- WBT January-March 2021

| Promotional Bonus Period | January 4, 2021 to March 31, 2021 |
|---|---|
| Promotion Qualifications & Details | • Bonuses only apply when opening a new consumer checking account[1] during the promotional bonus period.  Health Savings Accounts and Fiduciary Accounts are not eligible for the promotion.<br>• Offer is not available where the primary owner is an existing consumer checking customer or those who have been paid a new account opening bonus since January 1, 2018[2].  Geographic restrictions apply. Account opening is subject to approval.<br>• Limit one bonus per new customer account relationship<br>• All bonus dollars will be paid within 90 business days after the promotional period has ended.<br>• All bonus dollars will be paid to the newly opened checking account[3].<br>• An IRS 1099 form may be issued.<br>• Open your account via the Wisconsin Bank & Trust Video Banking session or online at the branch kiosk for video banking.<br>• Wisconsin Bank & Trust Video Banking sessions are only available during normal business hours upon location.  See available hours at wisconsinbankandtrust.com/locations. |
| Direct Deposit Bonus | • Have one minimum direct deposit of $500 or more posted to your new checking account within 60 calendar days of account opening to receive a $100.00 bonus. |
| Deposit Balance Bonus | • Have a total balance of at least $7,500.00 or more in your consumer checking account 60 calendar days after account open date to receive a $250 bonus[4]. |

1. If the account is closed by the customer or bank within 90 business days after opening, we may deduct bonuses received at closing.  Closing the account will negate any unearned bonuses.  A $25 account closing fee may also apply.
2. Customer and those who had an account refers to a person who is currently or was a primary or secondary on a consumer checking account.
3. If multiple checking accounts are opened during the promotional bonus period under the same primary owner name, the bonuses will be paid to the account that was opened first.
4. If 60th calendar day falls on a weekend or holiday, balance on the following business day will be used to qualify for promotion.

Member FDIC  Truth in Savings Disclosure  Revised 7-6-2020



# Free Checking with eStatement
## (117)

| Product Description | A non-interest bearing checking account requiring eStatement in order to avoid a monthly Paper Statement Fee. |
|---|---|

| Balance Information | Minimum Deposit to Open Account | $25 |
|---|---|---|
| | Minimum Balance Requirement | None |

| Account Fees | No fee if enrolled in eStatements[1]; $3.00 monthly Paper Statement Fee if not enrolled in eStatements. |
|---|---|
| | *If you elect to participate in GenGold, the membership fee is $5.00 each month after the first 90 days. (Where GenGold is available)* |

| Account Features | Overdraft Privilege Limit | $500 |
|---|---|---|
| | Debit Card available | |
| | Receive monthly eStatements through Online Banking | |
| | Check images not included with eStatement but can be viewed via Online Banking | |

[1] Must enroll in eStatements within the first 30 days of account opening or account conversion.  If eStatements are discontinued then a Paper Statement fee would apply.

Refer to our **Personal Account Fee Schedule** for details on Overdraft Privilege, repayment of Overdraft fees, and other account & service fees.

Member FDIC          Truth in Savings Disclosure          Revised 7-6-2020



# HSA Checking
## (141)

| | |
|---|---|
| **Product Description** | An interest bearing transaction account used to pay or reimburse the qualified medical expenses of eligible individuals.  Eligibility is determined by participation in a high deductible health insurance plan.  Similar to IRAs, annual contribution limits are determined by the IRS Tax Code. |

| | Tiers and Minimum Balances to obtain APY | Interest Rate | Annual Percentage Yield (APY) |
|---|---|---|---|
| **Rate Information** | Up to $999.99 | 0.01% | 0.01% |
| | $1,000 - $2,499.99 | 0.01% | 0.01% |
| | $2,500 - $4,999.99 | 0.01% | 0.01% |
| | $5,000 - $9,999.99 | 0.01% | 0.01% |
| | $10,000 - $24,999.99 | 0.01% | 0.01% |
| | $25,000 - $49,999.99 | 0.01% | 0.01% |
| | $50,000 - $99,999.99 | 0.01% | 0.01% |
| | $100,000+ | 0.01% | 0.01% |
| | **Rate Accurate as of (date):  2/1/2021**<br><br>The interest rate and APY may change at any time at the bank's discretion. | | |

| | |
|---|---|
| **Compounding & Crediting of Interest** | Interest will be compounded and credited to the account monthly. |

| | | |
|---|---|---|
| **Balance Information** | We use the daily-balance method to calculate the interest on your account.  This method applies a daily periodic rate to the principal in the account each day.<br><br>Interest begins to accrue no later than the business day we receive credit for the deposit of noncash items (for example, checks). | |
| | Minimum Deposit to Open Account | $25 |
| | Minimum Daily Balance to Obtain APY disclosed | $0.01 |

| | | |
|---|---|---|
| **Account Fees** | There is a Monthly Maintenance Fee of $2.50 unless one of the following is met:<br>1. Minimum Daily Balance greater than $2,500; or<br>2. Combined average daily balance greater than $5,000 in any combination of Checking, Money Market or Savings accounts where you are the primary owner. (Excludes HSA accounts) | |
| | Check/ACH Fee | $0.25 per each[1] |
| | $3.00 monthly Paper Statement Fee; no fee if enrolled in eStatement[2] | |

| | |
|---|---|
| **Account Features** | • Debit Card available |
| | • Check Images are provided with both the paper statement and eStatement |
| | • Paper statements;  eStatement is recommended |

[1]The check/ACH fee applies regardless of the balances maintained in the account and can be avoided by using a debit card for purchases.
[2] Must enroll in eStatements within the first 30 days of account opening or account conversion.  If eStatements are discontinued then a Paper Statement fee would apply.
Refer to our **Personal Account Fee Schedule** for details on other account & service fees.

Member FDIC            Truth in Savings Disclosure            Revised 7-6-2020



# Signature Series Checking
### (152)

| Product Description | An interest bearing checking account for customers that want to earn a premium interest rate for keeping higher balances. | | |
|---|---|---|---|
| **Rate Information** | **Tiers and Minimum Balances to obtain APY** | **Interest Rate** | **Annual Percentage Yield (APY)** |
| | Up to $49,999.99 | 0.00% | 0.00% |
| | $50,000.00 - $149,999.99 | 0.01% | 0.01% |
| | $150,000.00 - $249,999.99 | 0.01% | 0.01% |
| | $250,000.00 and above | 0.01% | 0.01% |
| | **Rate Accurate as of (date): 2/1/2021** <br><br> The interest rate and APY may change at any time at the bank's discretion. | | |
| Compounding & Crediting of Interest | Interest will be compounded and credited to the account monthly. | | |
| **Balance Information** | We use the daily-balance method to calculate the interest on your account.  This method applies a daily periodic rate to the principal in the account each day. <br><br> Interest begins to accrue on the entire balance no later than the business day we receive credit for the deposit of noncash items (for example, checks). | | |
| | Minimum Deposit to Open Account | $1,000 | |
| | Minimum Balance to Avoid Monthly Maintenance Fee | $50,000 average[1] or $100,000 in total relationship[2] balance for the cycle month | |
| | Minimum Daily Balance to Obtain APY disclosed | $50,000 | |

| Account Fees | Monthly Maintenance Fee | $9 |
|---|---|---|

| **Account Features** | Overdraft Privilege limit | $1,000 |
|---|---|---|
| | Foreign ATM Fees Refunded, if at least one direct deposit per month posted within the monthly statement cycle. <br> *Refunds occur at the end of the monthly statement cycle. | Up to $20 per month |
| | Fees Waived When Minimum Balance is met.  Fees will be assessed on the last day of the cycle month if the minimum balance is not met. <br> • Wire-In Domestic <br> • Stop Payment | |
| | Free Cashier Checks | |
| | Free Checks | |
| | Free GenGold Membership (Where GenGold is available) | |
| | Debit Card and eStatement are available | |

[1] The average balance is calculated by adding the current balance in the account for each day of the cycle month and dividing that figure by the number of days in the cycle month.

[2] Your total relationship balance can include your consumer accounts; checking, money market, savings, and Certificate of Deposit (CD) that you are primary or secondary owner. The period we use to calculate the average balance for related checking, money market and savings accounts starts and ends with the cycle month for this account. The CD balance is determined as of the cycle date for this account.

Refer to our **Personal Account Fee Schedule** for details on Overdraft Privilege, repayment of Overdraft fees, and other account & service fees.

Member FDIC                    Truth in Savings Disclosure                    Revised 7-6-2020



# Platinum Checking
## (155)

| Product Description | An interest bearing checking account for customers that want to earn a premium interest rate for keeping a certain balance requirement | | |
|---|---|---|---|
| **Rate Information** | **Tiers and Minimum Balances to obtain APY** | **Interest Rate** | **Annual Percentage Yield (APY)** |
| | Up to $50,000 | 0.01% | 0.01% |
| | $50,000.01 and above | 0.01% | 0.01% |
| | **Rate Accurate as of (date): 2/1/2021**<br><br>The interest rate and APY may change at any time at the bank's discretion. | | |
| **Compounding & Crediting of Interest** | Interest will be compounded and credited to the account monthly. | | |
| **Balance Information** | We use the daily-balance method to calculate the interest on your account. This method applies a daily periodic rate to the principal in the account each day.<br><br>Interest begins to accrue within the tier levels no later than the business day we receive credit for the deposit of noncash items (for example, checks). | | |
| | Minimum Deposit to Open Account | | $500 |
| | Minimum Balance to Avoid Monthly Maintenance Fee | | $7,500 average daily balance[1] for the cycle month |
| | Minimum Daily Balance to Obtain APY disclosed | | $.01 |

| **Account Fees** | Monthly Maintenance Fee | $12.00 |
|---|---|---|
| | *If you elect to participate in GenGold, the membership fee is $5 each month after the first 90 days.(Where GenGold is available)* | |

| **Account Features** | Overdraft Privilege Limit | $500 |
|---|---|---|
| | Foreign ATM Fees Refunded, if at least one direct deposit per month posted within the monthly statement cycle.<br>*Refunds occur at the end of the monthly statement cycle. | Up to $20 per month |
| | Debit card available | |
| | Check images are provided with both the paper statement and eStatement | |
| | Paper statements; eStatement is available | |
| | Maintain a valid email address with the bank to ensure eStatement delivery. | |
| | Free Checks | |

[1]The average balance is calculated by adding the current balance in the account for each day of the cycle month and dividing that figure by the number of days in the cycle month.

Refer to our **Personal Account Fee Schedule** for details on Overdraft Privilege, repayment of Overdraft fees, and other account & service fees.

Member FDIC Truth in Savings Disclosure Revised 7-6-2020



# Regular Money Market Account
## (177)

| Product Description | This tiered rate money market deposit account provides the liquidity of a savings account with limited check writing privileges.  A minimum balance is required to avoid a Monthly Maintenance Fee. |
|---|---|

| | Tiers and Minimum Balances to obtain APY | Interest Rate | Annual Percentage Yield (APY) |
|---|---|---|---|
| **Rate Information** | Up to $2,499.99 | 0.01% | 0.01% |
| | $2,500 - $4,999.99 | 0.01% | 0.01% |
| | $5,000 - $9,999.99 | 0.01% | 0.01% |
| | $10,000 - $24,999.99 | 0.01% | 0.01% |
| | $25,000 - $99,999.99 | 0.01% | 0.01% |
| | $100,000+ | 0.01% | 0.01% |

**Rate Accurate as of (date): 2/1/2021**

The interest rate and APY may change at any time at the bank's discretion.

| Compounding & Crediting of Interest | Interest will be compounded and credited to the account monthly. |
|---|---|

| | We use the daily-balance method to calculate the interest on your account.  This method applies a daily periodic rate to the principal in the account each day. |
|---|---|
| **Balance Information** | Interest begins to accrue no later than the business day we receive credit for the deposit of noncash items (for example, checks). |

| | | |
|---|---|---|
| | Minimum Deposit to Open Account | $2,500 |
| | Minimum Daily Balance to Avoid the Monthly Maintenance Fee | $2,500 |
| | Minimum Daily Balance to Obtain APY disclosed | $0.01 |

| Transaction Limitations | Six transfers and/or withdrawals per monthly statement cycle or similar 4 week period.  Transfers and/or withdrawals made by mail, messenger, ATM, or in person are unlimited.  **See fee schedule for Excessive Withdrawal fee details.** |
|---|---|

| Account Fees | Monthly Maintenance Fee | $15.00 |
|---|---|---|

| Account Features | • Check writing privileges |
|---|---|
| | • ATM access via debit card (with checking account) |
| | • Paper statement; eStatement is available |

Refer to our **Personal Account Fee Schedule** for details on other account & service fees.

# Premium Money Market Account
## (187)

| Product Description | This product is geared toward high balance accounts and offers tiered interest rates and no Monthly Maintenance Fee requirements.  Limited check writing privileges provide convenient account access. |
|---|---|

| | Tiers and Minimum Balances to obtain APY | Interest Rate | Annual Percentage Yield (APY) |
|---|---|---|---|
| Rate Information | Up to $24,999.99 | 0.01% | 0.01% |
| | $25,000 - $49,999.99 | 0.01% | 0.01% |
| | $50,000 - $99,999.99 | 0.01% | 0.01% |
| | $100,000 - $249,999.99 | 0.01% | 0.01% |
| | $250,000 - $999,999.99 | 0.01% | 0.01% |
| | $1,000,000 - $4,999,999.99 | 0.01% | 0.01% |
| | $5,000,000 - $9,999,999.99 | 0.01% | 0.01% |
| | $10,000,000+ | 0.01% | 0.01% |

**Rate Accurate as of (date): 2/1/2021**

The interest rate and APY may change at any time at the bank's discretion.

| Compounding & Crediting of Interest | Interest will be compounded and credited to the account monthly. |
|---|---|

| Balance Information | We use the daily-balance method to calculate the interest on your account.  This method applies a daily periodic rate to the principal in the account each day.  Interest begins to accrue no later than the business day we receive credit for the deposit of noncash items (for example, checks). |
|---|---|
| | Minimum Deposit to Open Account — $25,000 |
| | Minimum Daily Balance to Obtain APY disclosed — $0.01 |

| Transaction Limitations | Six transfers and/or withdrawals per monthly statement cycle or similar 4 week period.  Transfers and/or withdrawals made by mail, messenger, ATM, or in person are unlimited.  **See fee schedule for Excessive Withdrawal fee details.** |
|---|---|

| Account Fees | No Monthly Maintenance Fee |
|---|---|

| Account Features | • Check writing privileges <br> • ATM access via debit card (with checking account) <br> • Monthly statement |
|---|---|

Refer to our **Personal Account Fee Schedule** for details on other account & service fees.



# IRA Savings
## (294)

| Product Description | For retirement savers with a small amount to deposit or those who need flexibility managing rollover deposits.  An IRA Savings account is a safe place for IRA funds while researching investment alternatives. |
| --- | --- |

| | Interest Rate | Annual Percentage Yield (APY) |
| --- | --- | --- |
| Rate Information | 0.01% | 0.01% |
| | **Rate Accurate as of (date): 2/1/2021**<br><br>The interest rate and APY may change at any time at the bank's discretion. | |

| Compounding & Crediting of Interest | Interest will be compounded and credited to the account monthly. | |
| --- | --- | --- |
| Balance Information | We use the daily-balance method to calculate the interest on your account.  This method applies a daily periodic rate to the principal in the account each day.<br><br>Interest begins to accrue no later than the business day we receive credit for the deposit of noncash items (for example, checks). | |
| | Minimum Deposit to Open Account | $25 |
| | Minimum Daily Balance to Obtain APY disclosed | $0.01 |
| Transaction Limitations | There are no limitations on the number of withdrawals made at the teller window. | |

| Account Fees | No monthly maintenance fee |
| --- | --- |

| Account Features | • Additional deposits up to your annual contribution limit may be made to this account at any time. |
| --- | --- |
| | • Withdrawals/Transfers by check, draft, debit card, online banking, and telephone banking are not features of this account. |

For more information call (888) 948-4100.

Member FDIC Truth in Savings Disclosure Revised 7-6-2020

 **Regular Statement Savings**

(510)

| Product Description | A quarterly statement savings account that provides liquidity by allowing access to funds through a variety of banking channels including the teller window, ATM, online or telephone transfers. |
|---|---|

| | Interest Rate | Annual Percentage Yield (APY) |
|---|---|---|
| **Rate Information** | 0.01% | 0.01% |
| | *Rate Accurate as of (date):* **2/1/2021**<br><br>The interest rate and APY may change at any time at the bank's discretion. | |

| **Compounding & Crediting of Interest** | Interest will be compounded and credited to the account monthly. |
|---|---|

| **Balance Information** | We use the daily-balance method to calculate the interest on your account.  This method applies a daily periodic rate to the principal in the account each day.<br><br>Interest begins to accrue no later than the business day we receive credit for the deposit of noncash items (for example, checks). |
|---|---|
| | Minimum Deposit to Open Account | $100 |
| | Minimum Daily Balance to Avoid the Monthly Maintenance Fee | $100 |
| | Minimum Daily Balance to Obtain APY disclosed | $0.01 |

| **Transaction Limitations** | Six transfers and/or withdrawals per monthly statement cycle or similar 4 week period.  Transfers and/or withdrawals made by mail, messenger, ATM, or in person are unlimited. **See fee schedule for Excessive Withdrawal fee details.** |
|---|---|

| **Account Fees** | Monthly Maintenance Fee<br>(waived for minors under the age of 21) | $3.00 |
|---|---|---|

| **Account Features** | • ATM access via debit card (with checking account) |
|---|---|
| | • Quarterly statements. If the savings is combined with a checking account or has EFT activity the account will receive monthly statements. |

Refer to our **Personal Account Fee Schedule** for details on other account & service fees.

Member FDIC Truth in Savings Disclosure Revised 7-6-2020



# Passbook Savings
## (520)

| | |
|---|---|
| **Product Description** | A basic savings account allowing access to funds by presenting a passbook at the teller window. Accountholders are responsible for bringing their passbook to the bank each time they visit and having the activity, including interest payments, documented in the passbook. |

| | **Tiers and Minimum Balances to obtain APY** | **Interest Rate** | **Annual Percentage Yield (APY)** |
|---|---|---|---|
| **Rate Information** | $0.01 to $250,000 | 0.01% | 0.01% |
| | Above $250,000 | 0.01% | 0.01% |

*Rate Accurate as of (date):* **2/1/2021**

The interest rate and APY may change at any time at the bank's discretion.

| | |
|---|---|
| **Compounding & Crediting of Interest** | Interest will be compounded and credited to the account **quarterly**. |

| | |
|---|---|
| **Balance Information** | We use the daily-balance method to calculate the interest on your account. This method applies a daily periodic rate to the principal in the account each day. |

Interest begins to accrue no later than the business day we receive credit for the deposit of noncash items (for example, checks).

| | |
|---|---|
| Minimum Deposit to Open Account | $100 |
| Minimum Daily Balance to Avoid the Monthly Maintenance Fee | $100 |
| **Minimum balance to obtain APY** | $0.01 |

| | | |
|---|---|---|
| **Account Fees** | Monthly Maintenance Fee | $6.00 |

| | |
|---|---|
| **Account Access** | • Unlimited Deposits can be made through direct deposit (ACH credit) or at the teller window.<br>• Transfers made by calling the bank or for Overdraft Protection will be allowed and subject to transaction limitations listed below.<br>• Withdrawals can only be made at teller windows. Transfers and/or withdrawals will not be allowed to post to the account from online banking, telephone banking system, external debits and ATM's. |

| | |
|---|---|
| **Transaction Limitations** | Six transfers and/or withdrawals per monthly statement cycle or similar 4 week period. Transfers and/or withdrawals made by mail, messenger, or in person are unlimited. **See fee schedule for Excessive Withdrawal fee details.** |

| | |
|---|---|
| **Account Feature** | Annual Statements are provided for the account unless the savings account is combined with a checking or has EFT activity. |

Refer to our **Personal Account Fee Schedule** for details on other account & service fees.

Member FDIC          Truth in Savings Disclosure          Revised 7-6-2020



# Signature Series Savings
## (552)

| Product Description | A monthly statement savings account that provides liquidity by allowing access to funds through a variety of banking channels including the teller window, ATM, online or telephone transfers. | | |
|---|---|---|---|
| **Rate Information** | **Tiers and Minimum Balances to obtain APY** | **Interest Rate** | **Annual Percentage Yield (APY)** |
| | Up to $49,999.99 | 0.00% | 0.00% |
| | $50,000.00 - $149,999.99 | 0.01% | 0.01% |
| | $150,000.00 - $249,999.99 | 0.01% | 0.01% |
| | $250,000.00 and above | 0.01% | 0.01% |
| | **Rate Accurate as of (date): 2/1/2021**<br><br>The interest rate and APY may change at any time at the bank's discretion. | | |
| **Compounding & Crediting of Interest** | Interest will be compounded and credited to the account monthly. | | |
| **Balance Information** | We use the daily-balance method to calculate the interest on your account. This method applies a daily periodic rate to the principal in the account each day.<br><br>Interest begins to accrue no later than the business day we receive credit for the deposit of noncash items (for example, checks). | | |
| | Minimum Deposit to Open Account | $1,000 | |
| | Minimum Daily Balance to Avoid the Monthly Maintenance Fee | $50,000 average[1] or $100,000 in total relationship[2] balance for the cycle month | |
| | Minimum Daily Balance to Obtain APY disclosed | $50,000 | |
| **Transaction Limitations** | Six transfers and/or withdrawals per monthly statement cycle or similar 4 week period. Transfers and/or withdrawals made by mail, messenger, ATM, or in person are unlimited. **See fee schedule for Excessive Withdrawal fee details.** | | |
| **Account Fees** | Monthly Maintenance Fee | $9.00 | |
| **Account Features** | • ATM access via debit card (with checking account)<br>• Foreign ATM fees refunded up to $20 per month if at least one direct deposit per month posted within the monthly statement cycle. Refunds occur at the end of the monthly statement cycle.<br>• Fees waived when minimum balance is met. Fees will be assessed on the last day of the cycle month if the minimum balance is not met.<br>  ○ Wire-In Domestic<br>  ○ Stop Payment<br>• Monthly statements.<br>• Paper statements; eStatement is available<br>• Maintain a valid email address with the bank to ensure eStatement delivery<br>• Must have Signature Series Checking or Platinum Checking to open Signature Savings.<br>• Signature Series or Platinum Savings account will be converted to another savings product if Signature Series Checking or Platinum checking account is closed. | | |

[1] The average balance is calculated by adding the current balance in the account for each day of the cycle month and dividing that figure by the number of days in the cycle month.

[2] Your total relationship balance can include your consumer accounts; checking, money market, savings, and Certificate of Deposit (CD) that you are primary or secondary owner. The period we use to calculate the average balance for related checking, money market and savings accounts starts and ends with the cycle month for this account. The CD balance is determined as of the cycle date for this account.
Refer to our **Personal Account Fee Schedule** for details on account & service fees.

Member FDIC    Truth in Savings Disclosure    Revised 7-6-2020



# Platinum Savings

(555)

| Product Description | A monthly statement savings account that provides liquidity by allowing access to funds through a variety of banking channels including the teller window, ATM, online or telephone transfers. | | |
|---|---|---|---|
| **Rate Information** | **Tiers and Minimum Balances to obtain APY** | **Interest Rate** | **Annual Percentage Yield (APY)** |
| | Up to $50,000 | 0.01% | 0.01% |
| | $50,000.01 and above | 0.01% | 0.01% |
| | **Rate Accurate as of (date): 2/1/2021** <br><br> The interest rate and APY may change at any time at the bank's discretion. | | |
| **Compounding & Crediting of Interest** | Interest will be compounded and credited to the account monthly. | | |
| **Balance Information** | We use the daily-balance method to calculate the interest on your account. This method applies a daily periodic rate to the principal in the account each day. <br><br> Interest begins to accrue no later than the business day we receive credit for the deposit of noncash items (for example, checks). | | |
| | Minimum Deposit to Open Account | | $500 |
| | Minimum Daily Balance to Avoid the Monthly Maintenance Fee | | $7,500 average daily balance[1] for the cycle month |
| | Minimum Daily Balance to Obtain APY disclosed | | $0.01 |
| **Transaction Limitations** | Six transfers and/or withdrawals per monthly statement cycle or similar 4 week period. Transfers and/or withdrawals made by mail, messenger, ATM, or in person are unlimited. **See fee schedule for Excessive Withdrawal fee details.** | | |

| Account Fees | Monthly Maintenance Fee | $12.00 |
|---|---|---|

| **Account Features** | • ATM access via debit card (with checking account) |
|---|---|
| | • Foreign ATM fees refunded up to $20 per month if at least one direct deposit per month posted within the monthly statement cycle. Refunds occur at the end of the monthly statement cycle. |
| | • Monthly statements. |
| | • Paper statements; eStatement is available |
| | • Maintain a valid email address with the bank to ensure eStatement delivery |
| | • Must have Platinum Checking or Signature Series Checking to open Platinum Savings. |
| | • Signature Series or Platinum Savings account will be converted to another savings product if Signature Series Checking or Platinum checking account is closed. |
| | • Limit one Platinum Savings account per customer. |

[1]The average balance is calculated by adding the current balance in the account for each day of the cycle month and dividing that figure by the number of days in the cycle month.

Refer to our **Personal Account Fee Schedule** for details on account & service fees.

Member FDIC                    Truth in Savings Disclosure                    Revised 7-6-2020



# High Yield Savings
## (587)

| | |
|---|---|
| **Product Description** | A tiered-rate monthly statement savings account that pays a competitive interest rate on higher balances.  A minimum balance must be maintained in order to avoid a Monthly Maintenance fee. |

| | Tiers and Minimum Balances to obtain APY | Interest Rate | Annual Percentage Yield (APY) |
|---|---|---|---|
| **Rate Information** | Up to $9,999.99 | 0.01% | 0.01% |
| | $10,000 - $24,999.99 | 0.01% | 0.01% |
| | $25,000 - $49,999.99 | 0.01% | 0.01% |
| | $50,000 - $99,999.99 | 0.01% | 0.01% |
| | $100,000+ | 0.01% | 0.01% |

*Rate Accurate as of (date):* **2/1/2021**

The interest rate and APY may change at any time at the bank's discretion.

| | |
|---|---|
| **Compounding & Crediting of Interest** | Interest will be compounded and credited to the account monthly. |

| | | |
|---|---|---|
| **Balance Information** | We use the daily-balance method to calculate the interest on your account.  This method applies a daily periodic rate to the principal in the account each day.  Interest begins to accrue no later than the business day we receive credit for the deposit of noncash items (for example, checks). | |
| | Minimum Deposit to Open Account | $10,000 |
| | Minimum Daily Balance to Avoid Monthly Maintenance Fee | $10,000 |
| | Minimum Daily Balance to Obtain APY disclosed | $0.01 |

| | |
|---|---|
| **Transaction Limitations** | Six transfers and/or withdrawals per monthly statement cycle or similar 4 week period.  Transfers and/or withdrawals made by mail, messenger, ATM, or in person are unlimited. **See fee schedule for Excessive Withdrawal fee details.** |

| | | |
|---|---|---|
| **Account Fees** | Monthly Maintenance Fee | $10.00 |

| | |
|---|---|
| **Account Features** | • ATM access via debit card (with checking account) |
| | • Monthly statement |

For more information call (888) 948-4100.

Member FDIC                                                                 Revised 7-6-2020



Personal Account Fee Schedule
Effective 3.1.20
wisconsinbankandtrust.com/service-fees

| | | | |
|---|---|---|---|
| Account Closing (Within 90 days of opening) | $25.00 | Returned Statement (per month) | $10.00 |
| Inactive Acct (after 6 months) if balance is $100 or less | No Charge | Safe Deposit Box - Drilling/Pulling (minimum) | $150.00 |
| Account Research/Balancing - per 30 min. | $12.50 | Safe Deposit Inventory (hour) | $50.00 |
| Account Research/Item Copy | $5.00 | Safe Deposit Box - Late Payment Fee | $10.00 |
| Account Transfers - Manual Loan Payment | $10.00 | Safe Deposit Box - Replacement Key | $25.00 |
| Account Transfers - Manual | No Charge | Snapshot Statement | $5.00 |
| ACH Reclamations (per item) | No Charge | Stop Payment | $35.00 |
| Additional/Duplicate Statement | $5.00 | Subpoena Responses (per hour) | No Charge |
| ATM Non Proprietary Usage (Exempt if in Network) | $2.50 | Walk In/Call in Wires | |
| Canadian Deposited Items | $6.00 | Wire In-Domestic | $12.00 |
| Cashiers Check Purchase | $10.00 | Wire In-International USD | $15.00 |
| Chargeback Fee - Canadian | $15.00 | Wire In-International FX | $15.00 |
| Chargeback Fee | $12.00 | Wire Out Domestic-Repetitive | $25.00 |
| Collection Items - Incoming/Outgoing | $27.50 | Wire Out Domestic-Non Rep | $30.00 |
| Copy Machine Use - per page | $2.00 | Wire Out Intl-Repetitive USD | $40.00 |
| Counter Checks - each | $1.00 | Wire Out Intl-NonRep USD | $50.00 |
| Coupon Collection Per Envelope | $20.00 | Wire Out Intl-Repetitive FX | $35.00 |
| Debit Card Replacement | $12.00 | Wire Out Intl-NonRep FX | $45.00 |
| Debit Card Rush Order | $75.00 | | |
| Dormant Account | No Charge | | |
| Escheatment/Abandoned Account | No Charge | | |
| Excessive Withdrawal Fee Per Item | $15.00 | | |
| External Transfer Cancellation | $5.00 | | |
| External Transfer Change | $5.00 | | |
| External Transfer Set Up | $5.00 | | |
| Fax - Incoming/Outgoing - per page | $2.00 | | |
| Foreign Check Collection Fee | $50.00 | | |
| Foreign Currency - per order | $22.00 | | |
| Foreign Currency Exchange-Customers Only (Plus Postage) | $22.00 | | |
| Foreign Draft | $50.00 | | |
| Garnishment/Levy Fee | $150.00 | | |
| International Service Assessment Fee with currency conversion (All Cards) | 3.00% | | |
| International Service Assessment Fee without currency conversion (All Cards) | 3.00% | | |
| IRA Annual Fee (Plans <$500) | $25.00 | | |
| IRA Transfer/Closure | $50.00 | | |
| Medallion/Signature Guarantee | $25.00 | | |
| Overdraft Fees | $35.00 | | |

Overdraft Fees $35.00
• Overdraft Fee - Nonsufficient Funds
• Returned Item Fee - Nonsufficient Funds per item per presentment

Fees apply to transactions created by check, in-person withdrawal, recurring debit card transactions, or other electronic means. Overdraft fees will not be imposed on ATM withdrawals or one-time debit card items unless the customer has opted in"

Overdraft Privilege: The total of the discretionary overdraft privilege (negative) balance, including any and all bank fees and charges, and interest charges is due and payable upon demand. Approval of payment of overdrafts by the bank on consumer accounts in good standing is only a discretionary courtesy, and not a right or obligation.

For Consumer accounts - No fee will be charged when the account is overdrawn five ($5.00) dollars or less. Overdraft fees are assessed on up to five items per day, with the maximum not to exceed $175.

Overdraft Transfer (via another deposit account) $10.00

The Overdraft Transfer (via another deposit account) fee will not be charged when the account is overdrawn five ($5.00) dollars or less.

Member FDIC                    Truth in Savings Disclosure                    Revised 7-6-2020

Member FDIC

## Overdraft Disclosure

This Overdraft Disclosure is applicable to the following member banks of Heartland Financial USA, INC:  Bank of Blue Valley, Citywide Banks, Dubuque Bank and Trust, First Bank & Trust, Illinois Bank & Trust, Minnesota Bank & Trust, New Mexico Bank & Trust, Premier Valley Bank, Rocky Mountain Bank and Wisconsin Bank & Trust and will be referred to as WE or The Bank.

The Bank believes that it is important to use your checking account responsibly.  We also understand that mistakes and financial shortfalls happen from time to time.  Whatever your circumstance, we provide overdraft and nonsufficient funds (NSF) services that are designed to assist you through short-term difficulties.  The following three services are available to protect you in the event that your checking account should become overdrawn:

**Overdraft Privilege™ (ODP)**
ODP is a service that provides a pre-determined "safety net" in the event your account should become overdrawn. The bank may pay a transaction even though nonsufficient funds exist in the account, saving you from the inconvenience, cost, and possible embarrassment of having your transaction denied. This service will not cover ATM withdrawals or everyday card transactions unless you provide your consent. A $35.00 fee will be assessed for each overdraft created and paid. Overdraft Privilege™ balances must be repaid within 30 days.  Overdrafts will be paid at the bank's discretion and this is not a guarantee of payment on all transactions. For example, we typically do not pay overdrafts if the customer's account is not in good standing (as defined in the Personal Deposit Account Agreement and Disclosure) and the account is being handled irresponsibly.

**You may enroll in or remove Overdraft Privilege™ at any time by contacting your local banking center.**

**Overdraft Transfer**
 This service provides overdraft protections from another checking, savings, or money market account. In the event of a negative available balance, the amount and the $10.00 fee will automatically be transferred from the predetermined account to cover the negative available balance. The $10.00 per use fee will be deducted from the checking account that has this overdraft protection. The $10.00 Overdraft Transfer fee will not be charged when the account is overdrawn ($5.00) dollars or less.

**Ready Reserve**
This service is an unsecured revolving line of credit attached to a checking account and designed to provide overdraft protection. Qualification will be based on your application and credit approval.  Loan advances will automatically transfer the exact amount to cover the overdrafts up to your credit limit. A $25.00 annual fee will be assessed.

### IMPORTANT THINGS TO KNOW

Your financial fitness is important to us. If we notice you are using Overdraft Privilege™, we will offer other overdraft protection plans options, such as a link to a savings account, which may be less expensive than our standard overdraft practices.

The order in which credits, checks, debits and other withdrawals from your account are paid can make a difference in the event your account is short of funds.  We credit and pay items in a manner that is most fair to our customers by crediting and paying in the following presentment order:

- Deposits and other credits
- ATM Transaction
- Debit Card Transactions - posted according to the time the *final* authorization was processed
- Wire Transfers
- ACH Items
- On-us Checks presented for cash payment – posted in numerical order from lowest check number to highest
- Checks – posted in numerical order from lowest check number to highest

Member FDIC

## What You Need to Know about Overdrafts and Overdraft Fees

An <u>overdraft</u> occurs when you do not have enough money in your account to cover a transaction, but we pay it anyway.  We can cover your overdrafts in two different ways:

1. We have <u>standard overdraft practices</u> that are available with your account.
2. We also offer <u>overdraft protection plans</u>, such as a link to a savings account, which may be less expensive than our standard overdraft practices.  To learn more, ask us about these plans.

This notice explains our <u>standard overdraft practices</u>.

**What are the <u>standard overdraft practices</u> that you may elect to have on your account?**
> At our discretion, we <u>may</u> authorize and pay overdrafts for the following types of transactions:
> - Checks and other transactions made using your checking account number
> - Automatic bill payments
>
> We <u>will not</u> authorize and pay overdrafts for the following types of transactions unless you have provided consent to do so:
- ATM transactions
- Everyday Debit Card transactions

We pay overdrafts at our discretion, which means we <u>do not guarantee</u> that we will always authorize and pay any type of transaction.

If we do <u>not</u> authorize and pay an overdraft, your transaction will be declined.

**What fees will I be charged if the Bank pays my overdraft?**
> Under our standard overdraft practices:
- We will charge you a fee of up to **$35** each time we pay an overdraft.
- No fee will be charged when the account is overdrawn five dollars ($5.00) or less.
- Overdraft fees are assessed up to five items per day.

**What if I want to the Bank to authorize and pay overdrafts on my ATM and everyday Debit Card transactions?**
> If you also want us to authorize and pay overdrafts on ATM and everyday debit card transactions, you must "Opt In".
> You may "Opt In" by visiting any one of our local banking centers or by calling the number for your local bank listed below:
- Bank of Blue Valley - 877.280.1862
- Citywide Banks – 877.280.1859
- Dubuque Bank and Trust - 877.280.1851
- First Bank & Trust - 877.280.1864
- Illinois Bank & Trust – 877.280.1853
- Minnesota Bank & Trust – 877.280.1860
- New Mexico Bank & Trust – 877.280.1856
- Premier Valley Bank – 877.280.1863
- Rocky Mountain Bank – 877.280.1858
- Wisconsin Bank & Trust - 877.280.1855

YOU MAY CHANGE OR REVOKE THIS CONSENT AT ANY TIME BY NOTIFYING US BY CALLING THE NUMBER OF YOUR LOCAL BANK LISTED ABOVE.

Member FDIC     Truth in Savings Disclosure     Revised 7-6-2020

# PERSONAL DEPOSIT ACCOUNT AGREEMENT AND DISCLOSURE

This Deposit Account Agreement and Disclosure contains information about terms, conditions, fees and interest rates for one or more accounts you open with us (each individually or collectively referred to as your "Account").

As used in this document, the term "Agreement" means: (i) this Deposit Account Agreement and Disclosure, (ii) any related application you submit ("Application"), (iii) any rate and fee schedules we provide to you (each a "Schedule"), (iv) applicable disclosures we provide to you or related agreements, including but not limited to our Privacy Notice, Truth in Savings disclosures, our Regulation CC Funds Availability Disclosure, and the Electronic Transaction Disclosure and Error Resolution Notice, and (v) all related agreements. As used in the Agreement, "you" and "your" refers to each depositor agreeing to the terms and conditions of the Agreement and "we," "us" and "our" refer to Wisconsin Bank and Trust.

Your Account is subject to the general terms and conditions of the Agreement and any specific terms and conditions that may be provided in the Agreement for specific types of accounts if your Account is that type of account. If you open multiple Accounts, you may receive Schedule information for each Account, but the Agreement will cover all your Accounts. By signing a Signature Card for your Account or by opening or continuing to hold your Account, you acknowledge receipt of the Agreement, and you agree to the terms and conditions set forth in the Agreement, as amended from time to time.

Please read the Agreement carefully. You should keep a copy of the Agreement and any information we give you regarding changes to the Agreement for your records as long as you have your Account with us. You can get a current copy of the documents that make up the Agreement at any of our branches.

1. **Explanation of Some Terms.** As used in the Agreement, the terms listed below have the meanings provided:

   a. "ACH" means the Automated Clearing House, an electronic network, and an "ACH transaction" or "ACH entry" means an electronic Debit or Credit to your Account sent via ACH.

   b. "Authorized Signer" means any person authorized by the Owner(s) of your Account to act on behalf of the Owner(s) regarding the Account. Please refer to the section entitled "Authorized Access" for more details.

   c. "Available Balance" means the funds in your Account that are available to you to withdraw or transfer; to pay checks and other Items; and for all other uses permitted under the Agreement.

   d. "Card" means any card we issue to you that you may use to access your Account, including debit cards and ATM cards.

   e. "Credit" means a deposit or other addition to your Account.

   f. "Debit" means a withdrawal or other deduction from your Account.

   g. "Electronic Fund Transfers" and "EFT" means any transfer of funds you make or request through an electronic terminal, telephone, or computer or magnetic tape for the purpose of ordering, instructing or authorizing us to process a Debit or Credit to your Account. EFTs include without limitation ATM transactions, Debit Card transactions and ACH transactions.

   h. "Hold" means that we put a Hold on (or "freeze") some or all of the funds in your Account, meaning that we may refuse to: (i) allow withdrawals from the Account; (ii) pay Items drawn against your Account or process other Debit transactions to your Account; and (iii) refuse to accept deposits to your Account or process other Credit transactions to your Account.

   i. "Item" means: (i) all orders and instructions for the payment, transfer or withdrawal of funds from your Account (whether issued or unissued); (ii) all deposits to your Account, even if returned unpaid; (iii) any Holds or restrictions we put on your Account; and (iv) any other Debits or Credits to your Account. This includes without limitation checks or substitute checks and purported substitute checks; drafts or demand drafts; remotely created checks and items; image replacement documents; Electronic Fund Transfers and preauthorized electronic transactions; in-person withdrawals and transfers; withdrawal slips; any applicable Account fees; and any written document created or authorized in your name that would be a check or draft but for the fact that is has not been

signed; deposit adjustments; and any photocopy or image of any of the foregoing.

j.   "Mailing Address" means the mailing address reflected on our records for your Account.

k.   "Overdraft" means an Item or other event that would result in a negative balance in your Account.

l.   "Owner" or "Joint Owner" means the person(s) owning the funds in your Account and who has the power to deal with the Account in his or her name.

m.   "Statement" means any account statement we provide relating to your Account which show transactions that occurred in the time period covered by the Statement.

2.   **Personal Account.**   You are opening your Account as a "personal account," meaning that it is being used primarily for personal, family or household purposes.   Personal accounts are offered only to individuals that can form legally binding contracts under applicable law.   By signing a Signature Card for your Account or by opening or continuing to hold your Account, you represent that you meet these requirements.

3.   **Opening Your Account.**

a.   Credit Verification.   You authorize us to request and obtain one or more credit reports about you from one or more credit reporting agencies for the purposes of opening your Account, reviewing or collecting any Account opened for you, or for any other legitimate business purpose. You authorize us to disclose information about your account to a credit reporting agency if your Account was closed because you have abused it.

b.   IDENTIFICATION NOTICE.   To help the government fight the funding of terrorism and money laundering activities, federal law requires us to obtain, verify and record information that identifies each person who opens an account.   When you open an account, we will ask for your name, address, date of birth, social security number and other information that will allow us to verify identity, such as your driver's license or other identifying documents.   Even if you are already a customer of ours, we may ask you to provide this kind of information and documentation because we may not have collected it from you in the past or we may need to update our records. If you are unable to provide the information outlined above, we may block or close your Account.

4.   **Contacting You.**

a.   Your Authorization.   In addition to mailing notices to your Mailing Address, you authorize us to contact you in connection with your Account and for other purposes at: (i) telephone numbers you provide to us or use to contact us, including home landline telephones and personal mobile phones and other wireless devices and (ii) any electronic address you provide us or use to contact us, including email addresses.   We may contact you by placing voice telephone calls (including the use of automatic telephone dialing systems and prerecorded voice messaging) to your telephone numbers or, in the case of mobile telephones or other wireless device, by sending email or automated Short Message Service ("SMS") text messages.   These calls or messages may cause you to incur fees from your cellular provider or other service provider.   Your authorization extends to our vendors and third party service providers and any party to whom we transfer your Account.

b.   Method of Notice.   If we are required to provide any notice to you under the Agreement, we may notify you in any of the following ways: (a) sending written notice to you at your Mailing Address; (b) including a message with your Statement; or (c) providing notice to you in electronic form, if authorized.

5.   **Contacting Us.**   Any notice you provide to us will not be effective until we actually receive it and we have had reasonable opportunity to act on it.

a.   You may send us written notices at the following address:

Wisconsin Bank and Trust
119 Junction Road
Madison, WI 53717

b.   You may call us at: 877-280-1855.   Telephone calls to us will not constitute legal notice except as otherwise

Member FDIC   Truth in Savings Disclosure                                                            Revised 7-6-2020

provided by this Agreement.

**6. Fees and Charges.**

    a. <u>Schedules</u>. Subject to applicable law, you agree to pay us the fees and charges shown in the Schedules that are applicable to your Account or for other services performed by us and which are provided to you.

    b. <u>Debit Balances</u>. You will be liable to us for Debit balances in your Account (including without limitation Overdrafts and Account charges and promise to pay, upon demand, any and all Debit balances, all fees and charges and our reasonable attorneys' fees and costs and expenses of collection, including those incurred at trial and on any appeal).

    c. <u>Your Authorization</u>. You authorize us to charge your Account or any other accounts you hold with us for the payment of any fees and charges related to your Account and any other amounts you owe us under the Agreement, whether or not the charge, alone or together with other charges to your Account, results in an Overdraft of your account. Unless otherwise provided by applicable law, we may do this without notifying you in advance and we will not be liable to you for refusing to honor withdrawals or pay Items if you do not have enough funds in your Account because of these fees and charges.

    d. <u>Changes</u>. We may, in our sole discretion, make changes, additions or deletions to any applicable Schedules and the fees we charge from time to time. We will notify you of the changes, to the extent required by applicable law. You may obtain a copy of any current Schedules and information on other fees at any of our branches. Existing and future charges may be based upon the overall costs of providing account services and may or may not be based upon the direct cost or expense associated with providing the particular service involved. The charges may be based on consideration of profit, competitive position, deterrence of misuse of account privileges by customers, and our safety and soundness.

**7. Available Balance.**

    a. <u>Determining Your Available Balance</u>. Your Available Balance is the most current record we have about the funds that are available from your Account. To determine your Available Balance, we will consider all transactions that have posted to your Account (see the section entitled "Posting" for more details), any Holds that may be in place on deposits you have made to your Account and pending transactions that we have authorized but not yet posted to your Account. Deposits may affect your Available Balance as described in the Regulation CC Funds Availability Disclosure.

    b. <u>Withdrawals</u>. At any given time your Available Balance may not reflect all of your withdrawals and other Debit transactions, such as your outstanding checks, recurring Debit transactions, your Card transactions or other Debit transactions that you have authorized but that have not yet been paid from your Account.

    c. <u>Deposits</u>. At any given time, your Available Balance may not reflect the most recent deposits to your Account, and deposits may not become part of your Available Balance immediately even if we have collected or received Credit for the deposit. The Regulation CC Funds Availability Disclosure provided to you reflects our policies relating to the availability of deposited funds and when deposits are credited to your Account. We may change the Regulation CC Funds Availability Disclosure from time to time. If we do so, we will notify you to the extent required by applicable law.

    d. <u>Reductions in Available Balance</u>. As well as being reduced by withdrawals and other Debit transactions, your Available Balance may be reduced by the amount of: (i) any Hold we put on your Account; (ii) any lien on or security interest in your Account; (iii) any setoff we may exercise against your Account; (iv) any deduction we may make from your Account because of a dispute, legal process, reversed deposit or other reason; (v) any Item if we receive notice that the Item will be presented for payment or collection against your Account; (vi) any checks we certify; or (vii) any other deduction to your Account permitted by the Agreement.

**8. Posting.** The order of when transactions are posted to your Account impacts your Available Balance and may impact whether you incur Overdrafts and the amount of Overdraft fees you incur. Transactions may not be posted to your Account in the order in which they actually occurred, the order we received them or the order in which transactions appear in your Account history (including on your Statements). We often do not receive or post Debit transactions on the same day you conduct them.

    a. <u>Order of Posting</u>. We have the right to post transactions to your Account in any order we decide. After the end of each business day, we assign each transaction received for that day to a "category." We generally post all

transactions within a category (using the posting order or orders that apply to that category) before we post any transactions assigned to the next category. The following is a summary of the order in which we generally post transactions to your Account:

1)   *Deposits*. Deposits and other Credits we receive prior to our identified cutoff times (please refer to the Regulation CC Funds Availability Disclosure for more details) will be posted to your Account before we post any withdrawals or other Debits to your Account.

2)   *Non-Check Withdrawals*. Each category of non-check withdrawals and Debits will be posted to your Account in order of the date and time associated with each transaction, from earliest to latest. A date and time (if one is available) will be assigned to each transaction based on either when the transaction was preauthorized or, for transactions for which there is no pre-authorization, when the transaction was processed by us. If a date and time is not available, these transactions will be posted to your Account after all other transactions in that category that do have a valid date and time are posted, and will be posted in order of the amount of the transactions, from lowest to highest. Non-check withdrawals and Debits are generally posted in the following order: (i) ATM transactions; (ii) Debit Card transactions; (iii) wire transfers and other Items that cannot be returned or recalled; and (iv) ACH transactions.

3)   *Check Withdrawals*. Each category of checks drawn against your Account will be posted to your Account in check number order, from lowest check number to highest check number. If a check number is not available, these checks will be posted to your Account after all other checks in that category that do have a check number are posted, and will be posted in order of the amount of the check, from lowest to highest. We generally post checks in the following category order: (i) checks payable from funds on deposit with us (sometimes referred to as "on-us" checks) presented to us for cash payment and (ii) other checks.

b.   <u>Notice Regarding Order of Posting</u>. The description of posting order above is intended to be representative of the most common types of transactions within each category, and other Items may be processed to your Account even if they are not specifically listed above. We may change the way we process and post transactions at any time regardless of any request or instruction you give us, and we may do so in our sole discretion and without notifying you.

9.   **Deposits to Your Account.** The following terms apply to deposits and other Credits to your Account:

a.   <u>Making Deposits. You may make deposits in person at one of our branches, by mail or by any other means we make available to you.</u> You are liable to us for all Items that we cash for you or accept for deposit to your Account.

b.   <u>Accepting Deposits. You</u> authorize us to accept all transfers, checks and other Items for deposit to your Account from anyone and at any time if they are made payable to you or to your order. We are not responsible for a deposit until we have received, verified and accepted it. We may refuse to accept all or any part of any deposit in our sole discretion at any time, even after we initially accept it, or we may impose conditions on any deposit. Any deposit receipts we issue are subject to our verification of the Items deposited. Please review the Regulation CC Funds Availability Disclosure for more details.

c.   <u>Notice of Deposits. We do not have to notify you of any order to deposit funds to your Account other than the notice you receive in your Statement.</u>

d.   <u>Your Warranties. In addition to any other warranties you provide to us under applicable law or under the Agreement regarding Items you deposit or cash, for each Item that you deposit or cash you warrant that:</u>
1)   <u>All signatures on the Item are authentic and authorized;</u>
2)   <u>You have the right to enforce the Item;</u>
3)   <u>The Item has not been changed or altered;</u>
4)   <u>The Item is valid; and</u>
5)   <u>There is no other claim or problem related to the Item.</u>

e.   <u>Collection Items. We may handle checks and other paper Items as a "collection Item" instead of as a deposit. This means that instead of accepting the Item for deposit into your Account, we will send the Item to the issuer's bank for payment and credit your Account when we receive payment for the Item. We may charge a fee for this service. If the collection Item is returned unpaid, we will return it to you.</u>

f.   <u>Check Cashing</u>. We may require you to deposit a check or other noncash Item payable to you into your Account instead of cashing it. If we cash a check or other noncash Item for you, we may put a Hold on your Account for a

corresponding amount until we collect it or until we are required to release the Hold under applicable law.

g. Crediting of Deposits. All non-cash Items deposited to your Account are credited to your Account subject to our receipt of final payment by the payor bank. When we receive final payment, the Item becomes a collected Item.

  1) When you make a non-cash deposit and we credit your Account for that deposit, this Credit is provisional (temporary). We may reverse or otherwise adjust any deposit or other Credit we believe has been erroneously made to your Account at any time and without prior notice to you.

  2) If any funds you deposit become "available" and you can withdraw the funds, this does not mean the Item you've deposited is "good," has "cleared" or has been paid by the paying bank. It is possible that the Item will be returned unpaid months after the funds have been made available to you and you've withdrawn them. We cannot guarantee that an Item you deposit will not be returned and you will continue to be liable to us for all deposited noncash Items before and even after we make the funds available to you.

h. Returned Items. This subsection applies to Items that you deposit or cash, including Items drawn on us as well as Items drawn on other financial institutions.

  1) We have the right to charge back or otherwise debit your Account or other accounts you hold with us for any deposited Item that is returned, even if you have made withdrawals against it.

  2) If we do not receive final payment or if any Item you have deposited or cashed is charged back to us for any reason, we receive notice of or have reason to believe there is a claim or problem related to the Item (for example, that the Item was altered, forged or unauthorized) or we are unable to collect the Item for some other reason, you authorize us to do one or all of the following without prior notice and at any time: (i) charge your Account or any other accounts you have with us for the amount of the returned Item, our returned Item fee, any interest paid on that Item and any other fee we pay or incur; (ii) put a Hold on your Account or any other accounts you have with us for the amount of the Item until we have resolved the claim or problem; (iii) resubmit the Item for payment by any means or attempt to collect the Item by other means; and (iv) pay any claim related to the Item. Any resulting deductions or Holds will cause a deduction to your Available Balance and may result in Overdrafts.

  3) In connection with the return of an Item, we will have no duty to question the truth of facts that are being asserted, to assess the timeliness of any claim or to assert any defense.

  4) If an Item to be charged back is lost in the process of collection or unavailable for return, we may rely upon a photocopy of the Item or upon any other generally accepted notification of return of the Item, in charging you for the amount of the returned Item.

i. Direct Deposits. If we allow direct deposit services for automatic preauthorized deposits to your Account of Social Security payments, other government benefit payments or automatic transfers from your other accounts with us, you must notify us at least thirty (30) days prior to the next scheduled direct deposit or preauthorized transfer if you wish to cancel the direct deposit or transfer service. If any amount deposited must be returned to any government entity for any reason, you authorize us to deduct the amount from your Account as provided in the "Returned Items" subsection above.

**10. Withdrawals From Your Account.** The following terms apply to withdrawals from and other Debits to your Account:

a. Making Withdrawals. You may make withdrawals from your Account in any manner that is permitted by us for the type of Account that you have opened. We may subtract from your Account the amount of any Debit Item that you or any Authorized Person creates or approves. When you ask for a withdrawal in person, we may require you to show identification or other evidence satisfactory to us proving that you are authorized to make withdrawals. We do not have to ask questions of a person making a withdrawal request with your signature, or investigate any request with your signature.

b. Notice of Withdrawals. Unless otherwise provided, we do not have to notify you of any withdrawal or transfer from your Account other than the notice you receive in your Statement.

c. Restrictions on Withdrawals. Withdrawals and transfers from your Account may be restricted as provided in the Agreement, in applicable Schedules or by applicable law. We do not have to allow you to make a withdrawal from your Account if your Available Balance is not sufficient to cover the full amount of the withdrawal. We also may refuse to allow a withdrawal if there is a dispute about the Account, the Account is subject to legal process, the Account has been pledged as collateral for a debt, the availability of the funds on deposit cannot be verified, any required documentation has not been presented or you fail to repay an obligation to us on time.

d. Electronic Check Conversion. You may authorize a merchant or other payee to make a one-time electronic payment from your Account using information from one of your checks to pay for purchases or pay bills. The merchant or other payee uses the check information, along with the transaction amount, to initiate an ACH Debit transaction. The transaction is electronically transferred through the ACH system and the funds will be debited

directly from your account and deposited automatically into the merchant or payee's account. When information from your check is used to make an Electronic Fund Transfer, funds may be withdrawn from your account as soon as the same day you make your payment. A description of the transaction will appear on your Statement. Checks used in these types of transactions will not be included with your Statement or otherwise returned to you. This type of electronic funds transfer is governed by the Electronic Funds Transfer Act and subject to the Electronic Transaction Disclosure and Error Resolution Notice.

e.  <u>Checks Re-Presented Electronically</u>.  You may authorize a merchant to electronically re-present a check and collect a fee associated with a re-presentment of a check.  Checks re-presented electronically will not be included with your Statement or otherwise returned to you.  If a merchant electronically re-presents a check drawn on your Account and returned due to insufficient or uncollected funds, that transaction is not covered by the Electronic Funds Transfer Act.

f.  <u>Pre-Authorized Drafts</u>.  If we are unable to enforce presentment and transfer warranties on remotely created checks under Regulation CC, then if you voluntarily give information about your Account (such as our routing number and your account number) to a party who is seeking to sell you goods or services, and you do not physically deliver a check to the party, any Debit to your account initiated by the party to whom you gave the information is deemed authorized by you.

g.  <u>Non-Customer Check Cashing Fee and Identification</u>.  If a person who is not a customer of ours presents a check drawn against your Account for payment over the counter, we may require identification that meets our standards (which may include a thumbprint or fingerprint from the person) and we may charge the person a service charge for cashing the check.  We may refuse to cash the check and we will have no liability to you for refusing to cash the check if: (i) the person attempting to cash the check refuses to comply with our identification standards or refuses to pay a service charge or (ii) we have reason to believe or we suspect that the person attempting to cash the check is not entitled to the funds or there is some other problem with the check.

h.  <u>Large Cash Withdrawals</u>.  We may place reasonable restrictions on the time and method of any large cash withdrawal, including by cashing a check.  This may include requiring advance notice before we allow such a withdrawal.  We may also impose other conditions for making large cash withdrawals, and we may refuse the cash withdrawal if you do not agree with these conditions.

i.  <u>Notice Requirements</u>.  Federal law requires us to retain the right to require you to give at least seven (7) days' notice in writing prior to any intended withdrawal from a savings, negotiable order of withdrawal ("NOW"), or money market account.  Although we usually pay withdrawals or checks without notice on these accounts, doing so does not mean that we give up this right.

11. **Electronic Funds Transfers.**  Please refer to the Electronic Transaction Disclosure and Error Resolution Notice for more details and additional terms and conditions regarding EFT transactions and your Account.

12. **Checks and Items.**  The terms and conditions of this section may apply to checks and other Items that are drawn against your Account, Items that you cash or deposit or both.

a.  <u>Endorsements</u>.  An "endorsement" is a signature, stamp or other mark made on a check or other Item to transfer it to another person.
   1)  An endorsement may be necessary for the transfer or negotiation of a non-cash Item you cash or deposit.  If an endorsement is required, you must endorse (sign the back of) the Item.  All checks and other non-cash Items deposited to your Account should be endorsed payable to the order of us for deposit only, followed by your signature and Account number. All endorsements must appear on the back of the check or other Item within the first 1-1/2 inches from the left side of the Item when looking at it from the front. Endorsements should be in blue or black ink.
   2)  We may refuse to pay or cash any Item or accept any Item for deposit if we are unable to verify to our satisfaction that all of the necessary endorsements are present on the Item.  We may, but are not required to, accept Items with non-conforming endorsements or that otherwise do not meet our endorsement requirements.  We will not be liable to you for accepting such Items and you will be responsible for any loss incurred by us due to the return of the Item or any delay in processing the Item.
   3)  If an Item is payable to more than one person, we may require such Items to be endorsed by all parties to whom the Items are payable.  We may also require verification of any endorsement by a third party, through either an endorsement guarantee or personal identification.
   4)  You authorize us to supply your endorsement to any of your Items we cash for you or accept for collection or deposit to your Account.  You also authorize us to collect any Item that is payable to you but missing an

endorsement, and agree that we do not have to supply your endorsement before collecting the Item.

b.  Review of Items and Signatures

1)  We may inspect some checks or other Items, but you agree that we are not required to do so.  You recognize that we have adopted automated collection and payment procedures so that we can process the greatest volume of Items at the lowest possible cost to our customers. In light of this, you agree that we do not fail to exercise ordinary care in paying an Item solely because our procedures do not provide for the sight examination of Items with a face amount below an amount specified by us from time to time.

2)  If we inspect an Item drawn against your Account, we may use your Signature Card information in doing so. You authorize us to store and use Signature Card information in any reasonable form we deem necessary, including any digitized signature capture process. If we return an Item because we believe it did not match your Signature Card, we will not be liable to you even if the Item was actually authorized.  We will have no liability to you if we fail to detect a forgery of your signature or an alternation of one of your Items if the forgery or alteration is such that a reasonable person could not reasonably be expected to detect it.

3)  We will have no responsibility for reviewing the number or combination of signatures on or with an Item drawn against your Account, even if you specify that more than one signature is required for Items drawn against your Account or you specify any other signature requirements.  We will not be liable to you if an Item we process is contrary to any signature requirements you specify as long as the Item has at least one authorized signature.

4)  If the numeric amount on an Item drawn against your Account doesn't match an amount written out in words, we may select either one when paying that Item.

c.  Non-Handwritten Signatures.

1)  A "non-handwritten signature" is any mechanically reproduced signature, including without limitation facsimile signatures or other form of mechanically reproduced signature (such as desktop publishing, digitized, or computer software generated signatures).

2)  If you authorize us to honor non-handwritten signatures, they will not be considered a forgery or an unauthorized signature and will be effective as your signature or endorsement whether or not you have been negligent.

3)  You agree you will have the sole responsibility for maintaining security of any non-handwritten signature and any device by which the non-handwritten signature is affixed.  You will bear the entire risk for the unauthorized use of such non-handwritten signatures or device whether or not you are negligent.

4)  You further agree to indemnify and hold us harmless from and against any and all loss, costs, damage, liability, or exposure (including reasonable attorney's fees) we or you may suffer or incur as a result of the unlawful use, unauthorized use, or misuse by any person of any such facsimile or mechanically reproduced signature or the device by which it is affixed. If you use any form of facsimile or mechanically reproduced signature device, you agree to deliver a sample to us if we request it.

d.  Check Legends and Notations.  We may disregard information on any Item other than the signature of the drawer, the identification of the drawee financial institution and payee, the amount, the endorsements, and any other information that appears on the magnetic ink character recognition ("MICR") line.  We are not responsible to take action on, or for failure to notify you of, any "restrictions" (including without limitation legends, notations and other restrictive or conditional language such as "Void after 90 Days," "Paid in Full," "Void Over $100" or similar statements).  We may pay any Item drawn against your Account regardless of any restrictions printed on it, unless we have agreed in writing to honor restrictions.

e.  Your Liability.  You are liable for all losses, claims, damages or expenses incurred by any person that cashes or accepts your Items for deposit due to a delay in the return of the Item which results from: (i) any restriction printed on the Item written against your Account; (ii) any material appearing on the back of the Item (including without limitation blacked out areas and printed or written text or numbers); or (iii) the condition of the Item when you issue it.

f.  Dates on Items.

1)  We reserve the right to pay or return Items drawn against your Account without notice to you and without any liability to you, regardless of whether an Item is "stale" (meaning that the Item bears a date more than six (6) months in the past) or the Item is not dated.

2)  If you date a check in the future (referred to as a "postdated" check) and the check is presented for payment before the date of the check, we may pay it or return it unpaid. You agree that if we pay the check, the check will be posted to your Account on the date we pay the check, even though the posting date is prior to the date of the check.  You further agree that we are not responsible for any loss to you if we pay the check.  If we return a postdated check, we may return it to the presenter of it.

3)  You may submit a request for us to not honor a postdated check (a "Postdating Request").  Unless otherwise

provided by the Agreement, Postdating Requests will be treated as Stop Payment orders (see the section entitled "Stop Payments" for more details). You are responsible for revoking Postdating Requests once the check is no longer postdated.

g. <u>Substitute Checks and Electronic Files Pertaining to Original Checks</u>.
   1) A "substitute check" is a paper reproduction of an original check (front or back) that meets the requirements of federal law and is suitable for automated processing by banks.
   2) You will not cash or deposit any substitute checks or image documents intended as substitute checks that have not been previously endorsed by a bank.
   3) If you cash or deposit a substitute check or a purported substitute check into your Account instead of an original check, you are liable for losses, costs and expenses we may pay or incur due to: (i) that substitute check not meeting applicable substitute check standards or (ii) duplicate payments associated with the Item.
   4) For more information and additional terms and conditions regarding substitute checks, please refer to the "Substitute Check Policy Disclosure."

h. <u>Image Copies</u>.
   1) A financial institution on which a returned Item is drawn, also referred to as a "returning bank," may send us an electronic notice of return, an indemnified copy of the original Item, an image replacement document or an image (all of these referred to as an "image copy"). We may in our sole discretion receive the return of any Item you deposit or cash by Image Copy from the returning bank. You will be bound by an image copy just as if the original Item had been returned. If the Item you deposit or cash is a check or other paper Item, we may not be able to provide you the original should you request it.
   2) We may in our sole discretion return any Item presented to us for payment from your Account by providing the Item to the returnee using an image copy of the Item or other form of electronic return.

i. <u>Foreign Items/Foreign Currency</u>. A "non-U.S. Item" is an Item that is drawn on a financial institution not chartered in the U.S. or that is payable in a foreign currency. We may, but are not required to, accept non-U.S. Items for deposit or collection. The Regulation CC Funds Availability Disclosure may not apply to any Non-U.S. Item we accept for deposit or collection. If we accept a non-U.S. Item for deposit or collection, the actual amount you receive will be determined using our exchange rate that's in effect when we're paid for the Item, and may be adjusted to reflect our actual final exchange rate. You accept all risks associated with foreign currency fluctuation (exchange rate risk) and with any late return of the Item, and you will be responsible for any loss incurred by us as a result of our processing the Item. If a non-U.S. Item we accept for deposit or collection is returned later for any reason, we will charge your account at the applicable exchange rate in effect at the time of the return, which may be more or less than the exchange rate originally used for the deposit.

j. <u>Lost or Destroyed Items</u>.
   1) We will not be liable for the loss or destruction of an Item or notice of nonpayment that is in transit or not in our possession.
   2) If an Item you cash or deposit is lost or destroyed, you agree to cooperate with us in recreating it. If you fail to cooperate with us, we may at any time without notice to you reverse or otherwise adjust any Credit made to your Account for the lost or destroyed Item.
   3) If any Item you cash or deposit cannot be collected because it is lost or destroyed through no fault of ours: (i) we will have no responsibility to you for the actions or inactions of any collecting or returning back and (ii) we may deduct the amount of that Item from your Account and we may reverse any interest we paid in connection with the deposit.

13. **Stop Payments.** This section **DOES NOT** apply to electronic transactions which are covered by the Electronic Transaction Disclosure and Error Resolution Notice. Please review the Electronic Transaction Disclosure and Error Resolution Notice for provisions regarding stop payments for these types of transactions.

a. <u>Generally</u>. Subject to certain limitations, you may request us to stop payment ("Stop Payment") on checks and other Items written against your Account. To request a Stop Payment, you may do so in writing, in person, or by telephone. We may charge a fee each time you request a Stop Payment order. Please refer to the applicable Schedule for more details.

b. <u>Content</u>. To be valid for each Item a Stop Payment order covers, the content of a Stop Payment order must include: (i) your name; (ii) the date of the Item; (iii) the Account number on which the Item is drawn; (iv) the exact amount of the Item; (v) the Item number (or range of numbers if applicable); (vi) the name of the payee; and (vii) any other information we request. We may, but are not required to, process a Stop Payment order using only a portion of this required content. We will not be liable for failing to honor a Stop Payment order if any of the

information you provide that we rely upon in processing a Stop Payment order is incorrect or incomplete.  A confirmation letter detailing your stop payment request will be sent to you.  You must notify us immediately of any inaccuracies in the confirmation letter.

c.  <u>Other Requirements</u>.  A Stop Payment order will only be processed if we receive it in a time and manner giving us reasonable opportunity to act upon it before we pay, accept or otherwise become accountable for the Item(s) covered by it.  Each Stop Payment order is subject to our verification that the Item described in the Stop Payment order has not been already paid.

d.  <u>Effectiveness</u>.  Unless otherwise provided, each valid Stop Payment order processed by us will expire six (6) months after the date you request the Stop Payment order.  If you wish to revoke a Stop Payment order earlier than this, you must notify us of this in a time and manner that gives us reasonable opportunity to act.

e.  <u>Renewal</u>.  You must renew a Stop Payment order if you do not want it to expire.  A Stop Payment order may be renewed for an additional six (6) month period following the date it would otherwise expire if renewed while the Stop Payment order is still effective.  Each renewal is treated as an additional Stop Payment order.

f.  <u>Limitations</u>.  You may not stop payment on an official bank check, certified check, cashier's check or teller's check issued by us or request us to Stop Payment on any Item if we have already paid or accepted it or for which we have otherwise become accountable.  In addition, you may not stop payment on Items governed by separate agreement, such as a check guaranty agreement.  Further, you may not stop payment on an Item after acceptance of the Item by us.

g.  <u>Liability to Payee</u>.  A Stop Payment order will not have any effect on any liability you might have to the payee of a check covered by the Stop Payment order or the payee's right to collect on that check or the transaction underlying it.

h.  <u>Items Paid Over Valid Stop Payment Orders</u>.  Unless otherwise provided, if we pay a check over a valid Stop Payment order, we will credit your Account for the amount of loss you prove has occurred or the face amount of the check, whichever is less.  However, we will not be liable to you if we pay a check over a valid Stop Payment order and will not credit your Account if: (i) your Stop Payment order does not meet the requirements of this section; (ii) you cannot show to our reasonable satisfaction that you were not liable for payment of the check and were not otherwise required to pay the payee; (iii) you cannot show to our reasonable satisfaction that you did not benefit from our payment of the check or (iv) if we are not liable for paying the check under applicable law or we are required to pay the check under applicable law.

**14. Insufficient Funds and Overdrafts.**

a.  <u>Generally</u>. "Insufficient funds" means that there are not enough funds in your Account to pay for a withdrawal or Debit Item being presented against your Account.  If there are insufficient funds in your Account to cover any withdrawal or Debit Items presented against your Account, such Items will be handled in accordance with our Overdraft procedures, including the procedures described by this section and possibly the discretionary "Overdraft Privilege" policy described in the following section, or in accordance with any other agreement you may have with us (such as an agreement for an Overdraft protection program).

b.  <u>Determining Overdrafts</u>.  We may determine the funds available in your Account in connection with determining whether payment of an Item will create an Overdraft at any time between the time we receive the Item and the deadline for us to take action on the Item. We are not required to make this determination more than one (1) time during this period.  You should note that sometimes we authorize a transaction at a time when you have enough available funds to cover it, but because other transactions post before it and reduce your Available Balance, the transaction creates an Overdraft when we post it to your Account.  If we get a batch or multiple batches of Items in a day, and if one, some or all of them would overdraw your Account if paid, we will generally post Items in accordance with the procedures described in the "Posting" section.  This may result in larger dollar Items being processed before small dollar Items, even though this would have the effect of reducing your Available Balance more quickly.

c.  <u>Our Options</u>.  You do not have the right to withdraw funds that exceed the funds available in your Account.  When an Item will overdraw your Account and cause an Overdraft, we can either pay the Overdraft or return the Item.  You have no right to choose which Items we pay or return.  If we choose to pay one or more Overdrafts, we are not obligated to cover any future Overdrafts.

d.  <u>Fees</u>.  A service charge may be assessed on any Item that will overdraw your Account, regardless of whether we pay or return the Item.  This is referred to as an "Overdraft fee" if we pay the Item and a "returned Item fee" if we

return the Item.  An Overdraft fee is assessed for each Item we pay that causes your Account to be overdrawn or while your Account is already overdrawn.  Please refer to the applicable Schedule for more information about what fees will apply and how fees are calculated.

e.  <u>Avoiding Overdrafts</u>.  It is important to keep track of your Available Balance and to manage your funds responsibly by keeping track of transactions (including outstanding checks or Debit transactions you have authorized).  You can avoid fees for Overdrafts and returned Items by making sure that your Account always contains enough available funds to cover all of your transactions. When your Account balance includes some funds that are subject to a Hold, dispute or legal process, you should note that those funds are not available to cover your transactions.

f.  <u>Your Responsibility</u>.  You must promptly pay the amount of any Overdraft or any other negative Account balance along with any applicable service charges.  You agree, immediately upon notice from us, to deposit funds into your Account sufficient to cover any Overdraft plus applicable service charges, if required.  If you do not meet these obligations, we may charge you additional fees, close your Account, report you to a credit reporting agency or all of these.  You authorize us to use the funds from any subsequent deposit to your Account to pay any Overdraft and resulting fees.

g.  <u>ATM and Debit Card Overdrafts</u>.  We do not intend to authorize ATM or one-time Debit Card transactions (also known as "everyday debit transactions") if it appears this will result in an Overdraft to your Account unless you "Opt-In" for ATM and Debit Card Overdrafts as described in the next section.

**15.  Discretionary Overdraft Privilege Policy; Other Overdraft Protection.**

a.  <u>Applicability</u>.  As a general matter, the Overdraft policies outlined in the section entitled "Insufficient Funds and Overdrafts" will apply when Overdrafts occur on your Account.  The Overdraft procedures and the other terms of the Agreement will control any possible conflict between any provision of this section relating to the "Overdraft Privilege" policy outlined below and the other term and conditions of the Agreement.

b.  <u>Overdraft Privilege</u>.  If your Account remains in good standing your Account will be eligible for Overdraft Privilege, an automated service for approving your Overdrafts up to a pre-determined limit.  Keeping your account in "good standing" includes, at minimum: (i) making regular deposits consistent with your past practices; (ii) depositing an amount equal to the amount of discretionary Overdraft privilege extended to you or more in your Account within each thirty (30) day period and bringing your account to a positive balance and maintaining that balance in a positive position for 24 hours within every thirty-five (35) day period; (iii) not being in default on any loan or other obligation to us; and (iv) not being subject to any legal or administrative order or other legal process.  At the time you open your Account, you will be asked if you would like to elect to participate in our Overdraft Privilege program.  If you choose to participate in Overdraft Privilege, but then wish to un-elect participation in the program, please contact your local branch.  You may also choose whether to opt-in to receiving Overdraft coverage for ATM or one-time Debit Card transactions (also known as "everyday debit transactions").  If you do not opt in but we nonetheless authorize such transactions and this results in an Overdraft, we will not charge an Overdraft fee.  You will still be responsible for any applicable returned Item fees.  If you opt in, we will still retain sole discretion in deciding whether to authorize such transactions if it appears this will result in an Overdraft to your Account

There are three levels of Overdraft Privilege coverage that you may choose from:
1)  You may elect not to participate in our Overdraft Privilege.  If you do so, in the event you do not have sufficient funds in your Account, all items will be returned non-sufficient funds (NSF) (including but not limited to checks, ACH transactions, Internet, mobile, other banking and bill payment transfers), and ATM and every day debit card transactions will not be authorized.
2)  For "Standard Overdraft Privilege" coverage, we will consider approving your reasonable Overdrafts, limited to a maximum "Overdraft privilege limit" Overdraft (negative) balance, depending upon your Account type (See Truth in Savings disclosure).  A complete listing of current Overdraft privilege amounts for each Account type may be obtained upon request from us.  Standard Overdraft Privilege coverage will apply to checks, ACH Debit transactions and recurring debit card transactions.
3)  In order to include ATM and everyday Debit Card transactions in "Full Overdraft Privilege" coverage, you MUST opt-in" for this coverage.  Full Overdraft Privilege will pay all transactions up to the Overdraft privilege limit (See Truth in Savings disclosure for applicable limit).

c.  <u>Fees and Charges</u>.  Any and all applicable fees and charges, including Overdraft fees and any interest charges (as set forth in the applicable Schedule) will continue to be charged to you and will be included in the Overdraft privilege limit.  The total of the discretionary Overdraft Privilege (negative) balance, including any and all

applicable fees and charges such as Overdraft fees, are due and payable upon demand.

d.  <u>Discretionary Courtesy</u>.  Payment of reasonable Overdrafts under the Standard or Full Overdraft Privilege is a discretionary courtesy and not a right or obligation.  It is within our sole discretion and we can cease either Standard or Full Overdraft Privilege at any time without notice and for any reason.

e.  <u>Other Overdraft Protection</u>.  There may be other Overdraft protection options available to you.  For example, with "Overdraft Transfers," you may choose to have Overdraft protection from another checking or savings account from which funds will automatically be transferred to cover Overdrafts.  With "Ready Reserve Line of Credit," established accountholders with good credit history and sufficient income may apply for a line of credit to cover Overdrafts.  For more information regarding these options, whether they are available to you and current rates and fees associated with them, please contact your local branch.

16.  **Setoff and Security Interest.**  This section details some of our rights regarding debts owed by you to us.  The term "debts" includes all debts and liabilities owed by you to us, whether existing now or in the future, whether direct or contingent and whether joint or individual.  These debts include without limitation debts or fees arising from Overdrafts, endorsements, guarantees, loans, attachments, garnishments, levies, attorneys' fees or other obligations or amounts you owe us.

a.  <u>Setoff and Recoupment</u>.  If you owe a debt to us, we have the right to deduct funds from your Account and all your other accounts held with us without notice for all or part of the debt, unless applicable law requires otherwise.  This includes setoffs and any other deductions not considered setoffs but that are authorized under the Agreement, referred to as "recoupments."  Our right to deduct funds applies to any debts you owe to us, whether or not the debt is due at the time of the deduction.

b.  <u>Security Interest</u>.  You give us a lien on and security interest in your Account and all your other present or future accounts held with us to secure any debts you owe us.  If you fail to pay any debt you owe to us when that debt is due, we may enforce our lien and security interest without demand and without notifying you in advance unless applicable law requires otherwise.

c.  <u>Enforcement of Our Rights</u>.  Our enforcement of our right to deduct funds from your Account or our lien and security interest in your Account will reduce your Available Balance and may result in interest penalties, early withdrawal charges or other fees to you or in Overdrafts.  If your Account is a joint Account, we may enforce our rights under this section as to any debt owed to us by any Joint Owner, and we are not required to determine how much of the funds in the Account were contributed by the Joint Owner owing the debt unless the law requires us to do so.  The law in some instances may impose conditions or limits on our right to deduct funds from your Account under this section. To the extent that you may legally do so by contract, you waive those conditions and limits.

d.  <u>Exceptions</u>.  Our rights under this section do not apply: (i) to any IRA, HSA, Keogh plan or Trust Accounts or other tax-deferred retirement accounts; (ii) to a debt that is created by a consumer credit transaction under a credit card plan (though this does not affect our rights under any separate security interest to which you agree); or (iii) if our records show to our satisfaction that you own the Account in a representative capacity.

17.  **Checking Accounts.**  If your Account is a checking account (meaning that it is an account you can write checks against), the following terms apply:

a.  <u>Demand Deposit Accounts</u>.  If your Account is a demand deposit checking account, no interest will be paid on it.

b.  <u>NOW Accounts</u>.  If your Account is a "negotiable order of withdrawal" ("NOW") account, interest may be paid on it. In compliance with federal law, NOW accounts may only be provided to: (i) individuals (including sole proprietors); (ii) government entities; (iii) certain nonprofit business organizations operated primarily for religious, philanthropic, charitable, educational or similar purpose; and (iv) persons serving in a fiduciary or trustee capacity for a person that is permitted to hold a NOW account .   If your Account is a NOW account and we believe that you are no longer eligible to own a NOW account, we may either close your Account or convert it to another type of account.

c.  <u>Checking Sub-Accounts</u>.
   1)  We may establish on your behalf a transaction sub-account and a savings sub-account.
   2)  All Account information will continue to be provided to you as if you had one Account, and this structure will not affect your Available Balance, service charges, FDIC insurance, interest earnings, your Statement or any

other feature of your Account.

3) We will allocate funds between the two sub-accounts as we consider appropriate. When we receive Debit Items payable from your Account, they will be charged against the transaction sub-account. Funds not routinely needed to pay Debits may be periodically transferred to the savings sub-account. We will transfer funds from the savings sub-account back to the transaction sub-account as necessary to pay Debit Items in excess of the balance in the transaction sub-account. The remainder of your balance will be maintained in the transaction sub-account. If interest is paid on your Account balance, the interest calculation will be the same for both the savings sub-account and the transaction sub-account. If interest is not paid on your account balance, the savings sub-account will be non-interest bearing.

d. <u>Checks</u>. Checks and other Item documents you use must be on forms obtained through or approved by us. You must comply with our specifications for such Items. We will not be liable for the untimely return of any Item you have issued or any presentment-related problem resulting from the failure of an Item to confirm in any respect to our specifications. We will not be responsible for losses that result from improper printing on documents we don't approve. We may refuse to accept for deposit or pay checks in a form that we cannot process using our customary equipment.

e. <u>Copies of Items</u>. Depending upon your Account type, copies of items may be included with your statement or available through online banking. If your Account type does not provide copies of items, you may request copies of items by contacting your local branch.

18. **Interest.** If your Account earns interest, the following terms apply:

a. <u>Payment of Interest</u>. We will pay interest at the annual rate of interest ("Interest Rate") specified on the applicable Schedule we provide to you. This Schedule sets forth the frequency of interest payments, the frequency of any compounding and crediting, the interest accrual basis, the balance on which interest will be paid and any minimum balance requirements; but does not reflect compounding.

b. <u>Minimum Balance Requirements</u>. The applicable Schedule may specify a minimum balance that you are required to maintain in your Account. If the minimum balance is not maintained during a specified period, we may decide, at our option, not to pay interest on your Account, to charge a fee for that period or both. You should review any minimum balance requirements on the applicable Schedule.

c. <u>Interest Rate</u>. The applicable Schedule will indicate the method used to calculate interest. The initial Interest Rate is the current annual rate of interest that we will pay on the specified balance in your Account. We may pay interest at different rates, depending on the amount deposited and the type of depositor. If your Account has a variable Interest Rate, we have the right to change the rates and fees in accordance with the terms of the Schedule, without limits and without notice.

d. <u>Interest Compounding and Crediting</u>. The applicable Schedule will indicate the interest compounding and crediting frequency for your Account (if any). Compounding generally means that interest is being accrued on earned interest. Interest may be compounded more frequently than interest is credited to your Account.

e. <u>Interest Accrual</u>. Interest for your Account will begin to accrue on the business day we receive credit for your deposit. For deposits made by cash or EFT transfers, interest begins to accrue on the business day of your deposit. We may accrue interest on your Account more frequently than we pay or credit interest.

f. <u>Tax Identification Number</u>. Federal law requires us to obtain a Tax Identification Number ("TIN") for most interest-bearing accounts opened with us. To avoid backup withholding tax, you must provide us with an Internal Revenue Service ("IRS") Form W-9 or Form W-8BEN. U.S. citizens or other U.S. persons, including resident alien individuals, must appear as the primary Owner of your Account and must provide a signed Form W-9 (or substitute Form W-9). Nonresident aliens must provide a signed Form W-8BEN. We may also require other forms. Until we have received the completed and signed Form(s) W-9 or W-8BEN and supporting information or documentation, we may either: (1) not pay interest on your Account; or (2) pay interest and comply with the IRS backup withholding requirements. If, at any time, we receive information indicating that someone other than you is using the same TIN that you certified as your TIN on Form W-9 (or substitute Form W-9), and we are not able to determine that you are the rightful Owner of the TIN, we may, without notifying you, either: (1) stop paying interest on your Account; or (2) continue paying interest but comply with the IRS backup withholding requirements. We may also take any other action which we consider reasonable. Upon the death of the primary Owner of the Account, we must be provided with your estate's or your beneficiary's TIN, as applicable. If this is not provided, we may either: (1) stop paying interest on your Account after the date of your death; or (2) withhold

a portion of the interest that has been earned on your Account since the date of your death.

19. **Account Ownership.** We may rely solely on our records to determine the form of ownership of your Account. An Owner of your Account is, acting alone, authorized to perform all the transactions and other actions available to your Account, including without limitation: (i) making deposits or withdrawals by whatever means available for your Account; (ii) obtaining and releasing information regarding your Account; (iii) signing or authenticating any document in connection with your Account; (iv) designating Authorized Persons or otherwise giving rights to others to access your Account; (v) pledging funds in the Account as collateral to us for any obligation; and (v) closing the Account, with the disbursement of Account funds as instructed by the Owner closing the Account.

20. **Individual Accounts.** An individual account is an Account in the name of one depositor only. When only one individual is listed as the Owner of an Account, we will treat that Account as an individual account. If your Account is an individual account in your name, you are the only person authorized to act as an Owner, regardless of who actually owns the funds in the Account.

21. **Joint Accounts.** If your Account has more than one Owner, it will be considered a joint Account. If any person in addition to you is named on our records for your Account, we may presume that your Account is a joint Account and that this person owns the funds in your Account as a Joint Owner, even if that person has not signed a Signature Card (or other documentation), unless our records indicate that person is an Authorized Person or has some other relationship to the Account. If your account is a joint Account (meaning that it has multiple Owners), the following terms apply:

   a. <u>Ownership</u>. Unless otherwise provided by applicable state law, each Joint Owner has an equal ownership interest in the Account, and any funds deposited in the Account are owned by all Joint Owners.

   b. <u>Authorization</u>. Unless otherwise provided by applicable state law, each Joint Owner is authorized to perform all transactions and other actions available to an Owner and is authorized to act for the other Joint Owner(s), and we may accept orders and instructions regarding the Account from any Joint Owner (including to withdraw all or any part of the Account funds), in each case without the signature or authorization of the other Joint Owner(s). Actions each Joint Owner is authorized to perform include without limitation: (i) endorsing and depositing checks and other items payable to any Joint Owner; (ii) giving stop payment orders on any check or item, whether drawn by that Joint Owner or not; and (iii) changing the ownership of the Account to the extent of that Joint Owner's withdrawal rights.

   c. <u>Joint and Several Obligations</u>. The obligations of every Joint Owner under the Agreement are joint and several. This means that each Joint Owner is fully and personally obligated under the terms of the Agreement, including liability for overdrafts and debit balances, regardless of which Joint Owner benefited from or initiated the withdrawal.

   d. <u>Joint Account With Rights of Survivorship</u>. If your Account is a joint Account with rights of survivorship, the following terms apply:
      1) Unless otherwise provided by the Agreement or applicable state law, upon the death of a Joint Owner, that Joint Owner's ownership interest in the Account will immediately pass to the other Joint Owner(s) and the estate of the deceased Joint Owner will have no rights to the Account. If the Account has more than one surviving Joint Owner following the death of a Joint Owner, the Account will continue as a joint Account with rights of survivorship among the remaining Joint Owners.
      2) The legal ownership interests of surviving Joint Owners may vary by state law. However, this will not affect the authorization of each surviving Joint Owner to withdraw funds in the Account at any time, and in no event we will have responsibility for determining respective ownership interests of the surviving Joint Owner(s).
      3) Applicable state law may impose requirements that must be met to create a joint Account with rights of survivorship. You are solely responsible for meeting these requirements.

   e. <u>Joint Account With No Right of Survivorship</u>. If your Account is a joint Account with no right of survivorship (sometimes referred to as a "tenants in common" or "tenancy in common" account), the following terms apply:
      1) Upon the death of a Joint Owner, the ownership interest of the deceased Joint Owner will pass to the estate of the deceased Joint Owner. Either the surviving Joint Owner(s) or the deceased Joint Owner's estate may withdraw the funds in the Account at any time, and we will have no responsibility for determining respective ownership interests of the surviving Joint Owner(s) and the estate of the deceased Joint Owner.
      2) If the Account has more than one surviving Joint Owners following the death of a Joint Owner, the Account will continue as a joint Account with no right of survivorship among the remaining Joint Owners.

   f. <u>Presumption.</u> All joint Accounts are presumed to be joint Accounts with rights of survivorship unless applicable

state law does not permit this assumption or you have designated otherwise on your Signature Card.

g. <u>Death or Incompetence</u>.  You must notify us immediately in writing if any Joint Owner dies or is declared incompetent by a court or other administrative body of competent jurisdiction.

**22.  Additional Types of Account Ownership.**

a. <u>P.O.D. Account</u>.  A "Payable on Death ("P.O.D.") Account" is an account payable to you during your lifetime and payable to one or more beneficiaries you designate upon your death. If your Account is a P.O.D. Account, the following terms apply:

1) During your lifetime, only you can make withdrawals from the Account and the payees you list will have no right to any funds in the Account.
2) You may, by written direction to us, change the beneficiaries under the Account.  When we receive proof of your death (or the death of the last Joint Owner if a joint Account), the named beneficiary or beneficiaries can withdraw the entire Account balance.   If there are multiple beneficiaries, each will be paid in equal shares.  A beneficiary must be alive at the time of your death (or the death of the last Joint Owner if a joint Account) to acquire any right to funds in the Account.
3) If the P.O.D. Account is held by more than one person, each account holder will be subject to the rules pertaining to joint Accounts.   Any named beneficiary will not have any rights to the Account until the death of the last Joint Owner.
4) If there is more than one surviving beneficiary, the respective interest of each shall be deemed to be in equal shares. If there is no surviving beneficiary upon the death of the last owner, applicable state law will determine ownership of the funds in the Account.
5) Applicable state law may impose requirements that must be met to create a P.O.D. Account.  You are solely responsible for meeting these requirements.  If applicable requirements are not met, we may treat your Account as though there is no beneficiary.

b. <u>Informal Trust Account</u>.  An "Informal Trust Account" (sometimes referred to as a "Totten Trust" or "in-trust-for" account") is an informal trust account, reflected on our records but without a written trust agreement, where the Account is owned by you as a trustee for the benefit of a beneficiary or beneficiaries you designate. If your Account is an Informal Trust Account, it will be treated as a P.O.D. Account.

c. <u>Fiduciary Accounts</u>.  A "Fiduciary Account" is a type of account for which funds in the account are held by a "fiduciary" for the benefit of someone else.  Fiduciary Accounts include without limitation: (i) estate accounts, guardianship accounts and conservatorship accounts; (ii) any Informal Trust Account, Formal Trust Account, UTM Account, Agency Account or Representative Payee Account (all as defined below) and (iii) any other account established by an executor, administration, personal representative, trustee or other fiduciary.  If your Account is a Fiduciary Account, the following terms apply:

1) We reserve the right to require such documents and authorizations as we may deem necessary or appropriate to satisfy that the person(s) requesting or directing the withdrawal of funds held in the Account have the authority to withdraw such funds.  This applies at the time of account opening and at all times afterwards.
2) We act only as custodian of the funds in the Account.  We are under no obligation to act as a trustee or to inquire as to the powers or duties of any fiduciary.  We will not be responsible for making sure that any fiduciary fulfills his or her role as a fiduciary.

d. <u>Formal Trust Accounts</u>.  A "Formal Trust Account" is an account held by one or more trustees (each a fiduciary) for the benefit of one or more beneficiaries according to a written trust agreement.  If your Account is a Formal Trust Account, the following terms apply:

1) Upon our request, the trustee(s) will supply to us a copy of any trust agreement covering the account. We act only as custodian of the trust funds and are under no obligation to act as a trustee or to inquire as to the powers or duties of the trustee(s).
2) The trustee(s) and/or any person opening the Account, in their individual capacity and jointly and severally, agree to indemnify and hold us harmless from and against any and all loss, costs, damage, liability, or exposure, including reasonable attorney's fees, we may suffer or incur arising out of any action or claim by any beneficiary or other trustee with respect to the authority or actions taken by the trustee(s) in handling or dealing with the Account.
3) Only the named trustees may conduct transactions on the Account, and they may do so only according to the terms of the trust agreement and applicable law.

e. <u>Uniform Transfer to Minors Accounts</u>.  A "UTM Account" is an account that is established by a custodian (as a fiduciary) for the benefit of a minor under the applicable state version of the Uniform Transfers to Minors Act

("UTMA") or the Uniform Gifts to Minors Act ("UGMA") (the UTMA and UGMA referred to collectively as the "Act"). If your Account is a UTM Account, the following terms apply:

1) The rights and duties of the custodian are governed by the Act. The custodian is responsible for complying with the Act's requirements and we are not responsible for making sure the custodian complies with the Act.
2) The custodian will control the deposits in the Account on the minor's behalf, and the Account will be held for the exclusive right and benefit of the minor. We will accept withdrawal requests and other instructions for the Account only from you as custodian. We may, however, disclose information about the Account to the minor or the minor's representative. The custodian will not be allowed to pledge the Account as collateral for any loan to the custodian.
3) We may, but are not required to, turn over the Account balance to the minor when the minor reaches the age of majority under the Act.
4) The custodian will keep us informed of the minor's location.
5) The custodian and/or any person opening the Account, in their individual capacity, agree to indemnify and hold us harmless from and against any and all loss, costs, damage, liability, or exposure, including reasonable attorney's fees, we may suffer or incur arising out of any action or claim by any beneficiary or other custodian with respect to the authority or actions taken by the custodian in handling or dealing with the Account.

f. Agency Accounts. An "Agency Account" is an account to which funds may be deposited and withdrawals may be made by an "Agent" (as a fiduciary) designated by the owner of the funds (referred to as the "Principal"). An Agency designation may be combined with one of the other forms of account ownership. If your Account is an Agency Account, whether due to a power of attorney or otherwise, the following terms apply:
1) If the Principal wishes to designate the Account as an Agency Account, this designation must be in a form we deem acceptable.
2) The Agent has full authority with regard to the Account but does not have an ownership interest in the account.
3) We may refuse to honor or comply with a power of attorney presented to us for reasonable cause, or until we receive an affidavit from the Agent stating that the power of attorney presented is a true copy and that, to the best of the Agent's knowledge, the Principal is alive and that the relevant powers of the Agent have not been altered or terminated.
4) We may rely on a designation of an Agency Account until we receive written notice that it has been revoked either by the Principal or as a matter of law. An Agency Account can be revoked by the Principal at any time by notifying us in writing.

g. Representative Payee Accounts. A "Representative Payee Account" is a type of fiduciary account in which a "representative payee" (as a fiduciary) manages Social Security and Supplemental Security funds received on behalf of a beneficiary. If your Account is a Representative Payee Account, the following terms apply, subject to applicable law:
1) Upon our request, the representative payee will provide sufficient documentation from the Social Security Administration indicating his or her appointment as a representative payee for the Account Holder. We may require additional documentation from the representative payee indicating his or her authority to act on behalf of the Account Holder.
2) The representative payee does not have an ownership interest in funds in the Account. The representative payee does not have a right of survivorship in the Account on the death of the Account Holder.
3) The representative payee agrees to indemnify, and hold us harmless from and against any and all loss, cost, damage, liability, or exposure, including reasonable attorneys' fees, we may suffer or incur arising out of any action or claim by the beneficiary, a government entity or by any other party regarding the authority or actions taken by the representative payee in handling or dealing with the Account.

**23. Authorized Access.**

a. Authorized Persons. An Authorized Person includes without limitation: (i) any person listed on a Signature Card for your Account and other persons that you authorize to make withdrawals or transfers from your Account by whatever means the Agreement allows; (ii) any person to whom you make your unissued checks or other paper Items or Account number(s) available for purposes of transacting business on your Account; (iii) any person to whom you make any access device or access information available; and (iv) any person appointed by a court or other administrative body of competent jurisdiction to act on your behalf or your estate's behalf concerning your Account.

b. Powers of Authorized Persons. Authorized Persons may: (i) make deposits to your Account or withdrawals from your Account; (ii) get and release information concerning your Account; (iii) sign any Item or document concerning

your Account; and (iv) change the ownership on your Account.

c. <u>Designating Agents</u>. Any Owner of the Account may designate Authorized Persons to act on the behalf of all Owners of the Account concerning the Account. If your Account is a joint Account, each Joint Owner may designate Authorized Persons to act on the behalf of all Joint Owners concerning the Account. If you designate an Authorized Person:

1) We may require you to sign forms we approve or provide us with other legal documents acceptable to us for this designation to be effective.
2) We are not responsible for monitoring the actions of any Authorized Person or making sure the acts of any Authorized Person are for your benefit.
3) The powers you give an Authorized Person and any limitations on these powers are between you and this Authorized Person, even if we have express written notice of those powers. Unless otherwise provided by applicable law, all Owners of your Account will be liable for all actions of an Authorized Person concerning your Account, regardless of whether these actions exceeded the authority given to the Authorized Person or whether the Authorized Person is not approved by all Owners.
4) On any transactions involving the Account, we may rely on the instructions of any Authorized Person and you agree not to hold us responsible for any loss or damage you incur as a result of us following the instructions given to us by any Authorized Person.

d. <u>Other Authorization</u>. If you authorize any third person, such as a bookkeeping service, an employee or agent of yours, to retain possession of or prepare Items, you agree to assume full responsibility for any errors or wrongdoing performed or caused by such third person or any of its agents or employees.

e. <u>Modification/Revocation</u>. We may continue to recognize your designation of an Authorized Person or other authorization related to your Account until we have received written notice from you regarding the modification or revocation of this authorization and we have had reasonable time to act upon this notice.

**24. Restricting Your Account; Legal Process.**

a. <u>Restricting Your Account</u>. For any of the reasons outlined in this provision, we may "restrict" your Account, meaning that we may: (i) put a "Hold" on all or part of the funds in your Account or remove all or part of the funds in your Account and hold them in a separate account that does not pay interest; (ii) close your Account; (iii) pay part or all of the funds in your Account over to a court or other administrative body of competent jurisdiction; or (iv) require you to give us a liability bond. Unless otherwise provided by applicable law, we may restrict your Account for any reason provided by this section without advance notice to you and without any liability to you for doing so. If we restrict your Account, we will generally provide notice to you as soon as reasonably possible, though we may not provide advance notice if we believe that doing so could result in a security risk to us or the Owner(s) of the Account. If applicable law requires notice, we will provide it.

b. <u>Legal Process</u>. "Legal process" means any document that appears to have the force of law that requires us to place a Hold on, or pay out funds from, your Account. Legal process includes without limitation any garnishment, levy, government request for information, forfeiture, seizure, or other order from a court or government agency relating to your Account.

1) We may accept and act on any legal process we believe is valid, whether served in person, by mail or by electronic notification, with no liability to you for doing so. In acting on any legal process, or if we are not sure how your Account is affected by legal process, we may restrict your Account, including by putting a Hold on your Account until we determine who has the legal right to the funds in the Account (which may include requiring a court order telling us where to pay the funds).
2) Any legal process is subject to our security interest and right of setoff. Any fees or expenses we incur in responding to any legal process may be charged against your Account or any other account you hold with us. We may charge you a legal processing fee or charge you for costs or expenses we incur in complying with legal process as permitted by applicable law.
3) If your Account is a joint Account, we may restrict your Account upon receiving legal process that identifies any Joint Owner. We may take these actions regardless of which Joint Owner contributed the funds to the Account, and we will have no duty to determine how much of the funds in the Account have been contributed by each Joint Owner.

c. <u>Legal or Administrative Proceeding</u>. We may restrict your Account if it is involved in any legal or administrative proceeding or if we reasonably believe that doing so is necessary to avoid loss. If you file for bankruptcy or bankruptcy is filed against you, we may restrict your Account, including by putting a Hold on your Account or turning funds in your Account over to a bankruptcy trustee.

d. <u>Adverse Claims or Disputes</u>.  If any person makes a claim against funds in your Account or there is a dispute over matters such as the ownership of your Account or the authority to withdraw funds from your Account, we may, without any liability to you, take one or more of the following actions: (i) restrict your Account until the claim or dispute is resolved to our satisfaction; (ii) continue to rely on the Signature Card(s) for your Account; or (iii) honor a claim upon our receipt of evidence satisfactory to us to justify the claim.  We may charge your Account for expenses and fees we incur in taking these actions.  If we are notified of a dispute, we do not have to decide if the dispute has merit before taking further action.  If we believe there to be a dispute between Joint Owners, we may take one or more of the following actions: (i) suspend or close the Account; (ii) require a court order to act; or (iii) require that all Joint Owners agree in writing to any transaction concerning the Account.

e. <u>Conflicting Instructions</u>.  If we receive conflicting instructions from Authorized Persons regarding the Account, or if we receive conflicting instructions from Joint Owners regarding the Account (including if one Joint Owner requests that we not pay items authorized by a different Joint Owner), we may place a Hold on the Account until such conflict is resolved to our satisfaction, but we are not required to do so.  If we restrict a joint Account due to conflicting instructions from Joint Owners, we may, but are not required to, refuse to release the restriction unless all Joint Owners agree in writing to remove it.

f. <u>Loss Prevention</u>.  As part of our loss prevention program, when we suspect that irregular, unauthorized or unlawful activities may be involved with your Account, we may put a Hold on your Account pending an investigation of such suspected activities; or we may close your Account and open a new account.

**25. Systems and Software.**  We will not be responsible to you for any loss or damages suffered by you as a result of the failure of systems and software used by you to interface with our systems or systems and software utilized by you to initiate or process banking transactions whether such transactions are initiated or processed directly with our systems or through a third party service provider. You are solely responsible for the adequacy of systems and software utilized by you to process banking transactions and the ability of such systems and software to do so accurately.

**26. Disclosing Your Information.**  You authorize us to share information about you and your Account with affiliates and third parties, unless applicable law or our Privacy Notice prohibits us from doing so.  Please refer to our Privacy Notice for your choices about information sharing.  Examples of when we may disclose information about your Account or the transfers you make to third parties include without limitation: (i) where it is necessary for completing transactions; (ii) to comply with legal process or government agency or court orders; (iii) in order to verify the existence and condition of your Account for a third party, such as a credit bureau or merchant; (iv) with your written permission; and (v) as permitted by our Privacy Notice.

**27. Account Information.**

a. <u>Statements</u>.  We will from time to time provide you with Statements.  Unless otherwise provided, we will send Statements monthly.  You must notify us in writing within thirty (30) days if you do not receive a scheduled Statement.

b. <u>Communications</u>.  We will from time to time provide to you other information related to your Account, which may include disclosures, notices, messages and other information or data relating to the Agreement or your Account (together these are referred to as "Communications" or a "Communication").

c. <u>Delivery</u>.  Depending on the type of account, we will send you Statements to your Mailing Address or provide you access to electronic Statements.  You are responsible for notifying us of your correct Mailing Address or e-mail address and updating us of any changes to either.  We will provide Communications to you by sending them separately to your Mailing Address, including them with a Statement or, if authorized, via electronic communication.  We will be considered to have delivered Statements and Communications we mail to you as of the second business day following the day a Statement or Communication was mailed to your Mailing Address or as of the first business day following the day a Statement or Communication was sent to you via electronic communication.

d. <u>Your Responsibility to Review</u>.  You are responsible for promptly and carefully reviewing all Statements or Communications we provide to you (together referred to as "Account Information") and for reporting any unauthorized transactions or errors reflected by Account Information to us.  Account Information will be considered to correctly reflect your transactions, such as deposits, withdrawals, refunds, imposition of fees, interest or dividends, and other Debits and Credits to your Account, unless you notify us in writing within the time limits provided in the Agreement.  Please refer to the section entitled "Unauthorized Transactions and Errors" for more details regarding the time limits and procedures for notifying us of unauthorized transactions and errors

and other related provisions.

   e.  <u>Changing Your Address</u>.  You must notify us of any change in your Mailing Address.  We may act on any instruction to change your Mailing Address from any person we reasonably believe is acting on your behalf.  We will act on instructions to change your Mailing Address within a reasonable time after we receive such instruction.  We may also change your Mailing Address if we receive an address change notification from the U.S. Postal Service, or if we receive notification from a business that provides corrected address information.

   f.  <u>Combined Statements</u>.  If you have multiple Accounts with us under the same name, your Statements for these Accounts will be automatically combined into a single Statement.

   g.  <u>Joint Accounts</u>.  We may address and send Account Information to any one or more of the Joint Owners.

   h.  <u>Returned and Unclaimed Account Information</u>.  Unless otherwise provided by applicable law:

     1)  *Returned Account Information*.  If Account Information sent to you is returned as undeliverable, we may discontinue mailing Account Information to you until you provide a valid address to us, though they will be considered available to you on the day they are made available.  We may destroy any Statements or Communications that are sent to you and returned as undeliverable.

     2)  *Unclaimed Account Information*.  If you have requested us to hold your Account Information for pickup, it will be considered as delivered to you on the day they are made available.  If we hold your Account Information for pickup and you do not claim it within ten (10) days of it being made available, we may send it to your Mailing Address or destroy it.

**28. Protection Against Fraud and Unauthorized Items.**  It is your responsibility to protect: (i) your Account Information, Account number(s) and other information related to your Account; (ii) any access device we provide for your Account (such as a Debit Card) or equipment that may allow access to your Account; and (iii) your checks and other paper Items.  An unauthorized person's access to your Account number may alone be sufficient to allow that person to initiate unauthorized transactions.

**29. Lost or Stolen Items.**  If any of your unissued checks have been lost or stolen, or someone is issuing unauthorized paper Items against your Account, or unauthorized Items occur against your Account, you must immediately notify us of this in writing.  If we become aware of or we suspect any such problem, we may take one or more of the following actions: (i) close your Account and open a new account or (ii) dishonor any check you indicate or we believe may have been lost or stolen or pay such a check provided that you have instructed us to pay it (and given us the number of that check).  Unless otherwise provided by applicable law, you will be liable for any losses that result from your failure to use ordinary care in safeguarding your unissued checks.

**30. Unauthorized Transactions and Errors.**  This section contains general provisions regarding unauthorized transactions and errors related to your Account.  This section **DOES NOT** apply to electronic transactions which are covered by the Electronic Transaction Disclosure and Error Resolution Notice.  Please review the Electronic Transaction Disclosure and Error Resolution Notice for provisions regarding unauthorized transactions and errors related to these types of transactions.

   a.  <u>Reporting Unauthorized Transactions or Errors</u>.

     1)  You must notify us in writing within thirty (30) days after a Statement is made available to you if the Statement lists or indicates any unauthorized transactions or errors.  This includes without limitation: (i) an Item that you did not authorize or that is altered; (ii) any encoding errors; or (iii) any other errors involving additions or subtractions (Debits or Credits) to your Account, including electronic transactions not covered by the Electronic Fund Transfer Act.

     2)  You must notify us in writing of any unauthorized, improper or missing endorsements on Items within six (6) months after a Statement reflecting this is made available to you.

     3)  You must notify us in writing of an altered or forged Item within thirty (30) calendar days after the Item or a Statement reflecting this is made available to you.

   b.  <u>Notification</u>.  You must submit written notices required by this section in affidavit form if requested by us.

   c.  <u>Investigation</u>.  We will investigate any unauthorized transactions or errors you report to us.  You must provide us with all information we need to investigate an alleged unauthorized transaction or error.  You must also file any police reports and provide any supporting affidavits and testimony we reasonably request.

   d.  <u>Failure to Notify</u>.  Unless otherwise provided by the Agreement or applicable law: (i) we will not be liable to you for any unauthorized transaction or error if you do not notify us within  the required period of time, and in such

cases we will not be required to reimburse you for any related loss to you; (ii) we will not be liable to you for any unauthorized transactions committed by the same person on your Account that could have been prevented if you had complied with your obligations for notifying us of unauthorized transactions; and (iii) if you fail to notify us of an altered or forged Item or signature within the required period of time, we will not be liable for any subsequent Items we pay in good faith which contain an unauthorized signature or alternation by the same person unless you notify us within ten (10) calendar days after the first altered or forged Item or a Statement reflecting this is made available to you.

e.   Credits to Your Account.   We may, but are not required to, provisionally (temporarily) credit your Account during our investigation regarding an unauthorized transaction or error for all or a portion of the amount claimed.   We may reverse this Credit if: (i) you fail to submit or sign documents required by us; (ii) you fail to cooperate fully with our investigation of the claim or our efforts to recover funds related to the claim; or (iii) we determine that the transaction that gave rise to the claim was proper.

f.   Adjustments.   If you or we (or both of us together) make an error on your Account, we may fix that error without first notifying you, including without limitation when the amount of one of your Items is paid for the incorrect amount, a deposit to your Account is added incorrectly or we apply a deposit to the wrong account.

**31. Standard of Care; Liability.**   For the purposes of this section, "we," "our" and "us" includes us and our affiliates, officers, directors, employees and agents.

a.   Standard of Care.   We will exercise ordinary care in meeting our obligations under the Agreement.   "Ordinary care" requires only that we follow standards that do not vary unreasonably from the general standards followed by similar situated banks.

b.   Acts Beyond Our Control.   Neither you or we will be deemed to be in default of any of the obligations required to be performed under the Agreement if performance is delayed, hindered or becomes impossible because of acts beyond your or our control (including without limitation any act of God, natural disasters, accident, equipment failure, system failure, labor dispute, the potential violation of any guideline, rule or regulation of any government authority or the failure of any third party to provide any service used in connection with providing services to you under the Agreement).

c.   Our Liability.   We are responsible for processing your Items and transactions concerning your Account using customary banking practices.   If we make a mistake in processing Items or transactions and charge you more than we should have, or failed to give you Credit you were due, we will correct the error as long as you give us sufficient and timely notice and an opportunity to fix it.   However, we will not be liable in any event for losses or damages in excess of the amount of the transaction (the "face amount").

d.   Limitation of Liability.   Unless otherwise provided by applicable law, we will not be liable for:
1) Errors that do not result in a financial loss to you.
2) Any losses that result from our use of customary banking practices or for any losses provided that we have acted in good faith and with ordinary care.
3) Any action we are authorized or permitted to take by the Agreement (including without limitation making deductions to your Account or putting a Hold on your Account), even if this results in your account having insufficient funds or causes an Overdraft or otherwise causes you to incur fees, expenses or damages.
4) Your misconduct, errors or negligence or an act or failure to act of any person not directly within our control.
5) Anything we do in following your instructions (or those of an Authorized Person), or for not following such instructions if we reasonably believe that this would expose us to potential loss or civil or criminal liability, or conflict with customary banking practices.

e.   Limitation on Damages.   IN CONNECTION WITH YOUR ACCOUNT AND THE AGREEMENT, EXCEPT AS EXPRESSLY SET FORTH IN THE AGREEMENT, WE WILL NOT BE LIABLE FOR INDIRECT, SPECIAL, CONSEQUENTIAL OR PUNITIVE DAMAGES REGARDLESS OF THE FORM OF ACTION AND EVEN IF YOU OR WE HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.   This limitation will not apply where expressly prohibited by applicable law.

**32. Indemnification.**   For the purposes of this section, "we," "our" and "us" includes us and our affiliates, officers, directors, employees and agents.   Except to the extent that we fail to exercise ordinary care or we breach the Agreement, and to the extent permitted by applicable law, you agree to indemnify us and hold us harmless from all claims, demands, losses, liabilities, judgments and expenses (including attorney fees and legal expenses) arising out of or in any way connected with: (i) the Agreement and performance under the Agreement and (ii) services we provide to you under the Agreement or pursuant to your instructions (or those of any Authorized Person).   This

section will survive the closing of your Account and the termination of the Agreement.

33. **Changes to the Agreement.**

   a. <u>Our Right to Change the Agreement</u>.  The terms and conditions of the Agreement may be changed by us from time to time (each constituting a "Change").  We may make Changes by adding, modifying or deleting terms and conditions of the Agreement.  Changes we make may include without limitation changes to rates, fees, and charges associated with your Account and features of your Account.

   b. <u>Notice of Changes</u>.  We will notify you of Change as provided by the Agreement and as required by applicable law.  Unless otherwise provided by the Agreement or applicable law, notice of any Change will be given to you at least thirty (30) days before the effective date of the change applies, though the Agreement may be changed without notice to you and effective immediately if necessary to comply with any applicable law or regulation.  If any other federal or state law requires a longer notice period, we will comply with that requirement.  Notice of any Change will be deemed to have been given to and received by you on the third business day after notice of the Change was provided or made available to you.  Your continued use of Account after the effective date of any Change will constitute your acceptance of that Change.

   c. <u>Application of Changes</u>.  Unless otherwise provided by law, Changes to the Agreement will apply only to transactions that occur, or claims that arise, after the Changes become effective.

34. **Account Changes.**  We may convert your Account to another type of deposit account offered by us at any time subject to any notice required by applicable law.  If you have a high volume of activity, inappropriate activity or a negative balance or if we stop offering the type of Account you have, we may convert your Account to another type of account designed to accommodate your needs.  We will provide information about any new account we open for you when we convert your Account.

35. **Closing Your Account.**

   a. <u>Our Right to Close.  At any time for Accounts that are not Time Deposits and on any maturity date for Accounts that are Time Deposits</u> we may close your Account or temporarily stop a service related to your Account for any reason and without notifying you in advance, unless otherwise required by applicable law.  We will provide written notice to you in advance if we decide to terminate your Account relationship for any reason other than abuse of the account relationship or to prevent a loss, either separately or enclosed with a Statement. You agree that advance written notice from us will be reasonable if it is mailed to your Mailing Address immediately upon Account closure. You agree that instances of account abuse or to prevent a loss, notice is reasonably given by us if mailed immediately upon Account closure.  We may require you to close your Account and to open a new account if: (i) there is a change in Authorized Person(s); (ii) there has been a forgery or fraud reported or committed involving your Account; (iii) any Account checks are lost or stolen; (iv) you have too many transfers from your Account; or (v) any other provision of our Agreement with you is violated.

   b. <u>Your Right to Close.  You may close your Account for any reason at any time by: (i) giving us written notice or (ii) submitting a request at any of our branches.  Transferring all the money in your Account or reducing the balance in your Account to $0.00 will not necessarily close your Account and may result in additional fees charged to your Account.</u>

   c. <u>Our Obligations After Closing</u>.  After your Account is closed: (i) we will not pay further interest on the Account (if your Account pays interest); (ii) we will have no obligation to accept deposits or pay any outstanding checks or other Debit Items (and you agree to hold us harmless for refusing to honor any check or other Debit Item drawn on a closed Account), even if we receive or accept deposits intended for your Account after it is closed; and (iii) we may return any deposits we receive via ACH transaction to the sender.

   d. <u>Your Obligations After Closing</u>.  You agree that you will not attempt to make any further deposits or authorize any further Debits to your Account once it is closed.  After your Account is closed, you will remain liable for: (i) any fees or other obligations incurred prior to the date your Account is closed; (ii) any fees assessed by us in the process of closing your Account; or (iii) your responsibility to maintain sufficient funds in your Account to cover any outstanding checks or other Debit Items.  If an Item is submitted to us for payment after your Account is closed and we pay the Item, you will be liable to us for the amount of the Item.

   e. <u>Recurring Transactions</u>.  If you have made arrangements with a third party for recurring transactions to your Account (whether in the form of Credits or Debits), you must notify this third party to stop these transactions once your Account is closed.  We may receive funds or other Credit transactions intended for your Account after it is closed, but this does not mean your Account is "open."  We will have no liability to you if you do not receive any

regularly scheduled deposit or if a regularly scheduled payment is not made for you due to your failure to notify that party in a timely fashion of your Account closure.

f.   Returning Your Account Balance.  The balance remaining in your Account after it is closed will be returned to you, subject to the following conditions: (i) we may hold any remaining Account balance until you claim it and we determine you are entitled to receive it, except as provided by applicable state law governing unclaimed property and (ii) any fees, claims, setoffs or other amounts will be subtracted from your Account balance before we return it to you.  To return your Account balance, we may mail you a Cashier's Check for the applicable remaining Account balance.  Your returned Account balance will be sent to your last known Mailing Address.

g.   Interest.  If your Account is an interest bearing account and is closed, there may be accrued interest that has been calculated but not credited to your Account, referred to as "accrued unpaid interest."  If there is accrued unpaid interest, we will pay you that interest UNLESS we have told you otherwise.

h.   Reopening Your Account.  We may, but are not required to, reopen your closed Account if we receive a deposit to the Account.

**36. Dormant/Abandoned Accounts.**

a.   Dormant.  A "dormant" is an account that has been inactive.  Subject to applicable state law, "inactive" means that there has been no deposit or withdrawal to your Account or other communication from you about your Account for an extended period of time.  If your Account is inactive and we have been unable to contact you, your Account may be classified by us as "dormant."  Subject to applicable law, if we classify your Account as dormant we may charge the dormant account fee provided by any applicable Schedule and we may continue charging other fees applicable to your Account, and the Account may be presumed as abandoned.

b.   Abandoned.  State law governs when your Account is considered "abandoned."  Your account may be considered abandoned if you do not take certain actions within a specified period of time, as determined by applicable state law.  In accordance with applicable state law, funds in abandoned accounts will be remitted to the custody of the applicable state agency, also referred to as "escheat."  If we escheat the funds in your Account, we will close your Account.  We will not be liable for funds after we escheat them, and to recover funds escheated to a state you must file a claim with that state.  Unless otherwise provided by applicable law, we may charge you an abandoned account fee.

c.   Statements.  We reserve the right not to send Statements on Accounts that are dormant or abandoned, subject to applicable law.

**37. Resolving Claims.**  In this section, "Claim" means any claim, dispute or controversy by either you or us against the other, or against the employees or agents of the other, arising from or relating in any way to this Agreement or the deposit relationship between us.  Provisions in this section limit your rights to a jury trial.  You should review this section carefully.

> a.   **WAIVER OF JURY TRIAL**.  YOU AND WE AGREE TO WAIVE ANY RIGHT TO HAVE A JURY PARTICIPATE IN THE RESOLUTION OF ANY DISPUTE OR CLAIM, TO THE EXTENT ALLOWABLE UNDER THE LAWS OF THE STATE THAT GOVERN THIS AGREEMENT.  YOU UNDERSTAND THAT YOU AND WE ARE BOTH GIVING UP THE RIGHT TO A TRIAL BY JURY.

b.   Jurisdiction and Venue.  Any action or proceeding regarding your Account or this Agreement must be brought in a court of competent jurisdiction located in the state in which the branch is located where you opened your Account.  You and we submit to the personal jurisdiction of that court and waive the right to claim that it is an inconvenient forum.

**38. Governing Law.**  The Agreement shall be governed by and construed in accordance with all applicable federal laws and all applicable substantive laws of Wisconsin, the state in which our main office is located. In addition, we are subject to certain federal and state regulations and applicable clearing house and Federal Reserve rules and regulations governing the subject matter of the Agreement. You understand that we must comply with these laws, regulations and rules. You agree that if there is any inconsistency between the terms of the Agreement and any applicable law, regulation, or rule, the terms of the Agreement will prevail to the extent any such law, regulation, or rule may be modified by agreement.

**39. Assignability.**  In this section, "transfer" means to sell, assign or pledge your Account, give a lien or security interest in your Account or otherwise transfer your Account or a portion of your Account to another person.  You may not transfer your Account to anyone other than us except with our written consent.  If you transfer this Account without

our written consent, that transfer will not be valid or binding on us. Any pledge of your Account we approve remains subject to any right we have under the Agreement and applicable state and federal law. If you request to transfer ownership of your Account, we may require the Account be closed and a new account opened in the name of the transferee or pledgee. We may prevent you from withdrawing or transferring funds from your Account if you transfer your Account to another person.

**40. Additional Terms.**

a. <u>Entire Agreement</u>. The Agreement constitutes the entire agreement between you and us regarding your Account and supersedes any prior oral or written representations, conditions, warranties, understandings, proposals or agreements regarding your Account.

b. <u>Monitoring</u>. You understand that supervisory personnel may randomly monitor customer service telephone conversations to ensure that you receive accurate, courteous, and fair treatment. In addition, we may monitor, record and retain telephone conversations, electronic messages and other data transmissions between you and us at any time and without notice, unless applicable law requires otherwise. We will have no liability for doing or failing to do so.

c. <u>Illegal Activities</u>. You agree to comply with all applicable laws and regulations, including without limitation economic sanctions laws and regulations issued by the Office of Foreign Assets Control of the U.S. Department of the Treasury. You agree not to use your Account for any illegal activity, including without limitation unlawful internet gambling or the purchase of goods or services in violation of the law. We may refuse any gambling transaction, whether lawful or not. We may also refuse any transaction that we reasonably believe may involve illegal or suspicious activity. If we suspect that you or anyone else is using your Account for illegal activities, we may close your Account, put a Hold on your Account and any other accounts you have with us or both without notifying you in advance, unless otherwise required by applicable law.

d. <u>Third Party Beneficiary</u>. No person will be deemed to be a third party beneficiary under the Agreement.

e. <u>Survival</u>. The applicable terms of the Agreement continue in effect after we or you close your Account or after this Agreement is terminated.

f. <u>Severability</u>. If a court finds any provision of the Agreement to be invalid or unenforceable, such finding shall not make the rest of the Agreement invalid or unenforceable. If feasible, any such offending provision shall be deemed to be modified to be within the limits of enforceability or validity; however, if the offending provision cannot be so modified, it will be stricken from the Agreement and all other provisions of the Agreement in all other respects will remain valid and enforceable.

g. <u>Waiver</u>. You agree that we may waive, in our sole discretion, any fee, charge, term or condition set forth in the Agreement at the time the Account is opened or any time afterwards, on a one-time basis or for any period or duration, without changing the terms of the Agreement or your obligation to be bound by the Agreement. Doing so will not obligate us to provide similar waivers in the future or waive our rights to enforce the terms of the Agreement. If we fail to exercise any of our rights under the Agreement, that failure will not waive that right or any other right, and we may still enforce all of our rights in the future.

h. <u>Conflicts</u>. If the Agreement conflicts with any statements made by one of our employees or agents, the Agreement will control.

i. <u>Captions and Headings</u>. Captions, headings and subheadings used in the Agreement are only for reference purposes and are not intended to limit the meaning or scope of the terms and conditions of the Agreement.

j. <u>English Language</u>. English is the controlling language of the Agreement. We may translate the Agreement or any documents or materials related to it into another language for the purposes of convenience. However, if there is a discrepancy between English language materials and materials in another language, the English language version is controlling unless applicable law provides otherwise.

k. <u>Fiduciary Relationship</u>. Our relationship to you concerning your Account is that of debtor and creditor. No fiduciary, quasi-fiduciary or special relationship exists between you and us.

# Regulation CC Funds Availability Disclosure

This Regulation CC Disclosure is applicable to the following member banks of Heartland Financial USA, INC: Arizona Bank & Trust, Bank of Blue Valley, Citywide Banks, Dubuque Bank and Trust, First Bank & Trust, Illinois Bank & Trust, Minnesota Bank & Trust, New Mexico Bank & Trust, Premier Valley Bank, Rocky Mountain Bank and Wisconsin Bank & Trust and will be referred to as WE or Member Bank.

**YOUR ABILITY TO WITHDRAW FUNDS AT THE MEMBER BANK.** Our policy is to make funds from your cash and check deposits available to you on the first business day after the day we receive your deposit. Funds from electronic direct deposits will be available on the day we receive the deposit. Once the funds are available, you can withdraw them in cash and/or we will use them to pay checks that you have written. For determining the availability of your deposits, every day is a business day, except Saturdays, Sundays, and federal holidays. We do not have deposit cutoff times established for our branches; rather we will accept deposits until closing.

If you make a deposit on a day that we are open, we will consider that day to be the day of your deposit. However, if you make a deposit after the bank is closed or on a day, we are not open, we will consider that the deposit was made on the next business day we are open.

**Reservation of Right to Hold.** In some cases, we will not make all of the funds that you deposit by check available to you on the first business day after the day of your deposit. Depending on the type of check that you deposit, funds may not be available until the second business day after the day of your deposit. The first $225 of your deposit, however, may be available on the first business day after the day of your deposit. If we are not going to make all of the funds from your deposit available on the first business day, we will notify you at the time you make your deposit. We will also tell you when the funds will be available. If your deposit is not made directly to one of our employees, or if we decide to take this action after you have left the premises, we will mail you the notice by the business day after the day we receive your deposit. If you need the funds from a deposit right away, you should ask us when the funds will be available.

**Holds on Other Funds.** If we cash a check for you that is drawn on another financial institution, we may withhold the availability of a corresponding amount of funds that are already in your account. Those funds will be available at the time funds from the check we cashed would have been available if you had deposited it. If we accept for deposit a check that is drawn on another financial institution, we may make funds from the deposit available for withdrawal immediately but delay your availability to withdraw a corresponding amount of funds that you have on deposit in another account with us. The funds in the other account would then not be available for withdrawal until the time periods that are described elsewhere in this disclosure for the type of check that you deposited.

**Longer Delays May Apply.** The Member Bank reserves the right to delay your ability to withdraw funds deposited by check into your account for an additional number of days under certain circumstances. If we choose to take this action, we will notify you of the delay and we will tell you when funds will be available. Generally, funds will be available no later than the seventh business day after the day of deposit. We may impose these longer delays for any of the following reasons:

- You deposit checks totaling more than $5,525 on any one day.
- You redeposit a check that was previously returned unpaid.
- You have overdrawn your account repeatedly in the last six months.
- We believe a check you deposit will not be paid.
- There is an emergency, such as a failure of computer or communications equipment.

**Special Rules for New Accounts.** If you are a new customer, the following special rules apply during the first 30 calendar days your account is open:

Funds from electronic direct deposits to your account will be available the day we receive the deposit. Funds from deposits of cash, wire transfers, and the first $5,525 of a day's total deposits of cashier's, certified, teller's, traveler's, and federal, state, and local government checks will be available on the first business day after the day of your deposit if the deposit meets certain conditions (e.g. the checks must be payable to you). The excess over $5,525 will be available on the seventh business day after the day of deposit. If your deposit of these checks (other than a U.S. Treasury check) is not made in person to one of our employees, the first $5,525 will not be available until the second business day after the day of your deposit.

Funds from deposits of checks drawn on your Member bank will be available on the second business day after the day of your deposit.

Funds from all other check deposits will be available not later than the seventh business day after the day of deposit.

**Deposits at Automatic Teller Machines.** Deposit services may not be available at all terminals.

- For deposits (cash and checks) made at ATMs owned or operated by your Member bank, the first $225 of your deposit will be available immediately. The portion of your deposit over $225 will be available on the first business day after the day of your deposit, unless it is subject to one of the exceptions mentioned above. ATMs owned or operated by your Member bank will be labeled as such.
- For deposits (cash and checks) made at a non-proprietary ATM (i.e. an ATM not owned or operated by your Member bank) the funds will be available the next business day, unless it is subject to one of the exceptions mentioned above. This rule does not apply to ATMs owned or operated by your Member bank.

Member FDIC                               Truth in Savings Disclosure                               Revised 7-6-2020

# Substitute Check Policy Disclosure

**What is a substitute check?**

To make check processing faster, federal law permits banks to replace original checks with "substitute checks." These checks are similar in size to original checks with a slightly reduced image of the front and back of the original check. The front of a substitute checks states: "This is a legal copy of your check. You can use it the same way you would use the original check." You may use a substitute check as proof of payment just like the original check.

Some or all of the checks you receive back from us may be substitute checks. This notice describes rights you have when you receive substitute checks from us. The rights in this notice do not apply to original checks or to electronic debits to your account. However, you have rights under other law with respect to those transactions.

**What are my rights regarding substitute checks?**

In certain cases, federal law provides a special procedure that allows you to request a refund for losses you suffer if a substitute check is posted to your account (for example, if you think that we withdrew the wrong amount from your account or that we withdrew money from you account more than once for the same check). The losses you may attempt to recover under this procedure may include the amount that was withdrawn from your account and fees that were charged as a result of the withdrawal (for example, bounced check fees).

The amount of your refund under this procedure is limited to the amount of your loss or the amount of the substitute check, whichever is less. You also are entitled to interest on the amount of your refund if your account is an interest-bearing account. If your loss exceeds the amount of the substitute check, you may be able to recover additional amounts under other law.

If you use this procedure, you may receive up to $2,500.00 of your refund (plus interest if your account earns interest) within 10 business days after we received your claim and the remainder of your refund (plus interest if your account earns interest) not later than 45 calendar days after we received your claim.

We may reverse the refund (including any interest on the refund) if we later are able to demonstrate that the substitute check was correctly posted to your account.

**How do I make a claim for a refund?**

If you believe that you have suffered a loss relating to a substitute check that you received and that was posted to your account, please contact your Member bank at the contact information listed below:

| Local Bank | Phone | Address | City | State | Zip |
|---|---|---|---|---|---|
| Arizona Bank & Trust | 877-280-1857 | 2036 East Camelback Road | Phoenix | AZ | 85016 |
| Bank of Blue Valley | 877-280-1862 | 11935 Riley Street | Overland Park | KS | 66213 |
| Citywide Banks | 877-280-1859 | 1800 Larimer St., Suite 100 | Denver | CO | 80202-1404 |
| Dubuque Bank & Trust | 877-280-1851 | 1398 Central Avenue PO Box 778 | Dubuque | IA | 52001-0778 |
| First Bank & Trust | 877-280-1864 | 9816 Slide Road | Lubbock | TX | 79424 |
| Illinois Bank & Trust | 877-280-1853 | 4571 Guilford Rd. | Rockford | IL | 61107 |
| Minnesota Bank & Trust | 877-280-1860 | 7701 France Ave S., Suite 110 | Edina | MN | 55435 |
| New Mexico Bank & Trust | 877-280-1856 | 320 Gold SW, Suite 100 PO Box 1048 | Albuquerque | NM | 87102 |
| Premier Valley Bank | 877-280-1863 | 255 E. River Park Circle Dr., Suite 180 | Fresno | CA | 93720 |
| Rocky Mountain Bank | 877-280-1858 | 2615 King Ave W. | Billings | MT | 59102 |
| Wisconsin Bank & Trust | 877-280-1855 | 119 Junction Rd. | Madison | WI | 53717 |

You must contact the Bank within 40 calendar days of the date that we mailed (or otherwise delivered by a means to which you agreed) the substitute check in question or the account statement showing that the substitute check was posted to your account, whichever is later. We will extend this time period if you were not able to make a timely claim because of extraordinary circumstances.

Your claim must include:
- A description of why you suffered a loss (for example, you think the amount withdrawn was incorrect);
- An estimate of the amount of your loss;
- An explanation of why the substitute check you received is insufficient to confirm that you suffered a loss; and
- A copy of the substitute check.

Member FDIC Truth in Savings Disclosure Revised 7-6-2020

# ELECTRONIC TRANSACTION DISCLOSURE AND ERROR RESOLUTION NOTICE

This disclosure is applicable to the following member banks of Heartland Financial USA, INC:  Arizona Bank & Trust, Bank of Blue Valley, Citywide Banks, Illinois Bank & Trust, Minnesota Bank & Trust, New Mexico Bank & Trust, Premier Valley Bank, Rocky Mountain Bank and Wisconsin Bank & Trust and will be referred to as WE or Member Bank.

This Disclosure sets forth the services on your accounts established primarily for personal, family, or household purposes and is made in compliance with federal law regulating electronic funds transfer (EFT) services.  EFTs are electronically initiated transfers of money involving an account at the Financial Institution. The following disclosures set forth your and our rights and responsibilities concerning EFTs. In this disclosure, the words "you" and "your" mean those who sign as applicants or any authorized user(s). The words "we", "us" and "our" mean the Financial Institution. The abbreviation "PIN" or word "code" means a personal identification number.

## Online/Mobile Banking

You may use the online/mobile banking service to perform the following functions:

- Transfer funds between eligible accounts.
- Obtain balance information on eligible accounts.
- Review transactions on eligible accounts.
- Make loan payments (not available with mobile text banking).
- Advance funds from credit line (not available with mobile text banking).
- Online Bill Payment (not available with mobile text banking).
- View check images (not available with mobile text banking).
- Allow export of transaction history (not available with mobile text banking).

## Preauthorized Transfers

You may arrange for us to complete the following preauthorized transfers to or from your deposit accounts:

- Pay certain recurring bills from your checking or savings account.
- Accept direct deposits from the U.S. Treasury Department to your checking or savings account.
- Accept direct deposits from your employer or other financial institutions to your checking or savings account.
- You may arrange for us to complete any type of pre-authorized transfer into your deposit account at our bank.

## Telephone Banking

You may use our automated Telephone Banking system to perform the following functions:

- Transfer funds between your deposit accounts.
- Obtain balance information on your deposit accounts.
- Determine if a particular check has cleared your account.
- Verify the last 10 deposits made on your accounts.
- Verify the last 20 withdrawals made on your accounts.
- Obtain information on your loan accounts.

## ATM Card

You may use your card at automated teller machines (ATM) of ours, within the network identified on your card and such other terminals as the bank may designate from time to time to (some of these services may not be available at all terminals):

- Make deposits to checking or savings account.
- Withdraw funds from accounts associated with the card.
- Transfer funds between your accounts associated with the card.
- Obtain balance information on your accounts associated with the card.

Your primary account will be used for ATM transactions unless you specify a different account during ATM transactions.

## VISA® Debit Card

At present you may use your card at merchants who have agreed to accept the card within the network identified on your card, at ATMs of ours, ATMs within the network and such other terminals as the Bank may designate from time to time to (some of these services may not be available at all terminals):

- Make deposits to checking or savings account.
- Withdraw funds from accounts associated with the card.
- Transfer funds between your accounts associated with the card.
- Obtain balance information on your accounts associated with the card.
- Make purchases at VISA merchants from checking only.

Your primary account will be used for ATM transactions unless you specify a different account during ATM transactions.

### Electronic Check Conversion

You may authorize a merchant or other payee to make a one-time electronic payment from your account using information from your check to pay for purchases or pay bills. Electronic check conversion is a payment process in which a merchant or other payee (after obtaining your authorization) uses your check to gather routing, account, and check number information to initiate a one-time EFT. When information from your check is used to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day you make your payment. This type of EFT transaction involving a consumer account is covered by the Electronic Funds Transfer Act and this disclosure. A description of the transaction will appear on your statement.

### Re-presented Check Transactions and Fees

You may authorize a merchant to electronically collect a fee associated with the re-presentment of a check that is returned due to insufficient or unavailable funds. The resulting fee transaction, if debited as an EFT from a consumer account, is covered by the Electronic Funds Transfer Act and this disclosure. When a merchant re-presents a check electronically, that transaction is not covered by the Electronic Funds Transfer Act or this disclosure. A description of the transaction will appear on your statement.

### Limitations on Frequency and Amount

If your account is a Savings or Money Market Account, you may be charged an excessive withdrawal fee when an account holder makes more than six (6) transfers and/or withdrawals during any statement cycle or similar four (4) week period by check, draft, debit card or similar order (including POS transactions) made by the depositor and payable to third parties or by preauthorized or automatic transfers or telephone (including data transmission) agreement, order or instruction. See fee schedule for Excessive Withdrawal Fee details. Transfers and withdrawals made in person, by messenger, by mail or at an ATM are unlimited.

### ATM Card

You may withdraw up to $1,000 from ATM terminals each day you use your card and will be limited to 10 ATM transactions per day.

### VISA® Debit Card

You may withdraw up to $1,000 from ATM terminals each day you use your card and will be limited to 10 ATM transactions per day.

You may buy up to $5,000 worth of goods or services each day you use your card for point of sale transactions and will be limited to 20 point of sale transactions per day, exclusive of ATM withdrawals. There is an aggregate of 25 ATM transactions and point of sale transactions per day.

- Increased limits available upon institution discretion for ATM or VISA® Debit Card

### Fees and Charges

- We do not charge for Online/Mobile Banking, Preauthorized EFTs, or Telephone Banking.
- We do not charge for ATM transactions made at machines owned by us.
- We may charge you an ATM Non-Proprietary usage fee if you use an ATM that is not in our network. See our fee disclosure for this particular fee.
- We do not charge for any point-of-sale transactions made with your debit card.
- A Debit Card Replacement fee may apply, please see our fee disclosure for this particular fee.
- See our fee schedule for other applicable fees.

**ATM Fees**: When you use an ATM not owned by us, you may also be charged a fee by the ATM operator or any network used (and you may be charged a fee for a balance inquiry even if you do not complete a fund transfer).

### Currency Conversion & International Transactions

When you use your VISA Debit Card at a merchant that settles in currency other than US dollars, the charge will be converted into the US dollar amount. The currency conversion rate used to determine the transaction amount in US dollars is either a rate selected by VISA from the range of rates available in wholesale currency markets for the applicable central processing date, which rate may vary from the rate VISA itself receives, or the government mandated rate in effect for the applicable central processing date. The conversion rate in effect on the processing date may differ from the rate in effect on the transaction date or posting date.

You will be charged a 3.00% International Service Assessment on all international transactions, regardless of whether there is a currency conversion. If there is a currency conversion, the International Service Assessment is 3.00% of the transaction. An international transaction is a transaction where the country of the merchant is outside the USA.

### Consumer Liability

**Liability for Unauthorized VISA Debit Card Transactions.** Tell us AT ONCE if you believe your VISA debit card has been lost or stolen or of any unauthorized transactions. Your liability for unauthorized VISA debit card transactions that take place on the VISA system is Zero dollars ($0.00). We may require you to provide a written statement regarding claims of unauthorized VISA debit card transactions.

These provisions limiting your liability do not apply to VISA commercial credit cards or ATM or PIN transactions not processed by VISA and apply only to cards issued in the United States. With respect to unauthorized transactions, these limits may be exceeded to the extent allowed under applicable law (see Liability for Unauthorized Transfers paragraph below) only if we determine that you were negligent or fraudulent in the handling of your account or debit card. For specific restrictions, limitations, and other details, see your Cardholder Agreement. To notify us of lost or stolen cards or of unauthorized transactions, call or write us at the telephone number or address set forth below. This will help prevent unauthorized access to your account and minimize any inconvenience.

VISA is a registered trademark of Visa International.

In addition to the limitations set forth above, the following limitations may be applicable to your accounts:

**Liability for Unauthorized Transfers.** Tell us AT ONCE if you believe your ATM or debit card, PIN, Telephone Banking PIN, or online/mobile banking password has been lost or stolen or if you believe that an electronic fund transfer has been made without your permission using information from your check. Telephoning is the best way of keeping your possible losses down. You could lose all the money in your account (plus your maximum overdraft line of credit). If you tell us within two (2) business days after you learn of the loss or theft of your card or code, you can lose no more than $50.00 if

someone used your card or code without your permission. If you do NOT tell us within two (2) business days after you learn of the loss or theft of your card or code, and we can prove that we could have stopped someone from using your card or code without your permission if you had told us, you could lose as much as $500.00. Also, if your statement shows transfers that you did not make, including those made by card, code or other means, tell us at once. If you do not tell us within sixty (60) days after the statement was mailed to you, you may not get back any money lost after the sixty (60) days if we can prove that we could have stopped someone from taking the money if you had told us in time. If a good reason (such as a long trip or a hospital stay) kept you from telling us, we will extend the time periods.

## Contact Information

If you believe your card or code has been lost or stolen or that someone has transferred or may transfer money from your account without your permission, you agree to notify us immediately. Please contact your Member Bank at the contact information listed below. You should also call the number or write to the address listed below if you believe a transfer has been made using the information from your check without your permission.  If you recover your card or code after you have notified us, DO NOT USE IT.

.

| Local Bank | Phone | Address | City | State | Zip |
|---|---|---|---|---|---|
| Arizona Bank & Trust | 877-280-1857 | 2036 East Camelback Road | Phoenix | AZ | 85016 |
| Bank of Blue Valley | 877-280-1862 | 11935 Riley Street | Overland Park | KS | 66213 |
| Citywide Banks | 877-280-1859 | 1800 Larimer St., Suite 100 | Denver | CO | 80202-1404 |
| Illinois Bank & Trust | 877-280-1853 | 4571 Guilford Road | Rockford | IL | 61107 |
| Minnesota Bank & Trust | 877-280-1860 | 7701 France Ave S., Suite 110 | Edina | MN | 55435 |
| New Mexico Bank & Trust | 877-280-1856 | 320 Gold SW, Suite 100 PO Box 1048 | Albuquerque | NM | 87102 |
| Premier Valley Bank | 877-280-1863 | 255 E. River Park Circle Dr., Suite 180 | Fresno | CA | 93720 |
| Rocky Mountain Bank | 877-280-1858 | 2615 King Ave W. | Billings | MT | 59102 |
| Wisconsin Bank & Trust | 877-280-1855 | 119 Junction Rd. | Madison | WI | 53717 |

## Financial Institution Liability

**Our Liability for Failure to Make Transfers.** If we do not complete a transfer to or from your account on time or in the correct amount according to our agreement with you, we will be liable for your losses or damages. However, there are some exceptions. We will NOT be liable for instance:

- If, through no fault of ours, you do not have enough money in your account to make the transfer.
- If the money in your account is subject to legal process or other claim restricting such transfer.
- If the transfer would go over the credit limit on your overdraft line.
- If the ATM where you are making the transfer does not have enough cash.
- If the terminal or system was not working properly and you knew about the breakdown when you started the transfer.
- If circumstances beyond our control (such as fire or flood) prevent the transaction, despite reasonable precautions that we have taken.
- There may be other exceptions stated in our agreement with you.

**Business Days**. For purposes of this electronic funds transfer disclosure, our business days are Monday through Friday. Holidays are not included.

## Documentation

**Periodic Statement.** You will get a monthly account statement from us, unless there are no transactions in a particular month. In any case you will get a statement quarterly. You will get a quarterly statement from us on your savings account if this is the only account you maintain and the only possible electronic transfer to or from the account is a preauthorized deposit. If you have a passbook account, you may bring your passbook to us and we will record any electronic deposits that we made to your account since the last time you brought it in your passbook.
**Terminal Receipt.** You can get a receipt at the time you make any transfer to or from your account using any ATM terminal in the amount over $15.00.
**Direct Deposits**. If you have arranged to have direct deposits made to your account at least once every sixty (60) days from the same person or company, you can call your Member Bank at the contact information listed above - to find out whether or not the deposit has been made.

## Preauthorized Electronic Fund Transfers

**Stop Payment Rights**. If you have told us in advance to make regular EFTs out of your account(s), you can stop any of these payments. Here's how: Call us or write to us at the telephone number or address set forth above, in time for us to receive your request three (3) business days or more before the payment is scheduled to be made. If you call, we may also require you to put your request in writing and get it to us within fourteen (14) business days after you call. We will charge you for each stop payment order you give.  See the fee disclosure for the amount of the fee. You may not place a stop payment order on any ATM or Debit Card transaction.
**Notice of Varying Amounts**. If these regular payments may vary in amount, the person you are going to pay will tell you, ten (10) days before each payment, when it will be made and how much it will be. You may choose instead to get this notice only when the payment would differ by more than a certain amount from the previous payment, or when the amount would fall outside certain limits that you set.
**Liability for Failure to Stop Payment of Preauthorized Transfers**. If you order us to stop one of these payments three (3) business days or more before the transfer is scheduled, and we do not do so, we will be liable for your losses or damages.

## Confidentiality

We will disclose information to third parties about your account or the transfers you make:

- Where it is necessary for completing transfers; or
- In order to verify the existence and condition of your account for a third party, such as a credit bureau or merchant; or
- In order to comply with government agency or court orders; or
- If you give us your written permission.

Member FDIC                    Truth in Savings Disclosure                    Revised 7-6-2020

### Personal Identification Number (PIN) and Password

The ATM, Debit Card, Telephone Banking PIN, and Online/Mobile Banking password issued for your security purposes. The numbers are confidential and should not be disclosed to third parties or recorded on the card. You are responsible for safekeeping your PIN(s) and passwords. You agree not to disclose or otherwise make your ATM, Debit Card, Telephone Banking PIN or Online/Mobile Banking password available to anyone not authorized to sign on your accounts.

### Error Resolution

In Case of Errors or Questions About Your Electronic Transfers, please telephone or write to your Member Bank at the contact information listed above as soon as you can. If you think your statement or receipt is wrong or if you need more information about a transfer listed on the statement or receipt. We must hear from you no later than sixty (60) days after we sent the FIRST statement on which the problem or error appeared.

- Tell us your name and account number (if any).

- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.

- Tell us the dollar amount of the suspected error.

If you tell us orally, we may require that you send us your complaint or question in writing within ten (10) business days.

We will determine whether an error occurred within ten (10) business days after we hear from you and will correct any error promptly. If we need more time, however, we may take up to forty five (45) days to investigate your complaint or question, If we decide to do this, we will credit your account within ten (10) business days for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation. If we ask you to put your complaint or question in writing and we do not receive it within ten (10) business days, we may not credit your account.

If a notice of error involves an electronic fund transfer that occurred within thirty (30) days after the first deposit to the account was made, the error involves a new account. For errors involving new accounts, point of sale debit card transactions, or foreign-initiated transactions, we may take up to ninety (90) days to investigate your complaint or question. For new accounts, we may take up to twenty (20) business days to credit your account for the amount you think is in error.

We will tell you the results within three (3) business days after completing our investigation. If we decide that there was no error, we will send you a written explanation. You may ask for copies of the documents that we used in our investigation.

If a notice of error involves unauthorized use of your point of sale debit card with the VISA logo when it is used as a VISA point of sale debit card, we will provide provisional credit within five (5) business days after you notify us instead of within ten (10) or twenty (20) business days, We may withhold providing this accelerated provisional credit, to the extent allowed under applicable law, if the circumstances or account history warrants the delay.

**Notices**. All notices from us will be effective when we have mailed them or delivered them to your last known address on our records. Notices from you will be effective when received by us at the telephone number or the address specified in this disclosure. We reserve the right to change the terms and conditions upon which this service is offered. We will mail notice to you at least twenty one (21) days before the effective date of any change, as required by law. Use of this service is subject to existing regulations governing your account and any future changes to those regulations.

**Enforcement**. In the event either party brings a legal action to enforce this disclosure or collect amounts owing as a result of any Account transaction, the prevailing party shall be entitled to reasonable attorneys' fees and costs, including fees on any appeal, subject to any limits under applicable law.

### Termination of Electronic Fund Transfer Services

You agree that we may terminate the uses of these services if:

- You or any authorized user of your ATM Card, Debit Card, Telephone Banking, or Online Banking breach this or any other agreement with us;

- We have reason to believe that there has been unauthorized use of your ATM Card, Debit Card, Telephone Banking, or Online Banking;

- We will notify you or any other party on your account that we have cancelled or will cancel these services. You or any other party on your account can terminate these services by notifying us in writing.

Termination of service will be effective the first business day following receipt of your written notice. Termination of these services will not affect the rights and responsibilities of the authorized users for transactions initiated before termination.

**Other Provisions**. There may be a delay between the time a deposit is made and when it will be available for withdrawal. You should review our Funds Availability Policy to determine the availability of the deposited funds. We reserve the right to refuse any transaction which would draw upon insufficient funds, exceed a credit limit, lower an account below a required balance, or otherwise require us to increase our required reserve on the account.

**Other Terms**. The cutoff time for ATM or Debit Card transactions to be posted to your account on the current business day is approximately 6:00 P.M. local time. Any transactions after this time will be posted to your account on the following business day. In addition to the procedures outlined above, you should know that resolution of disputes between customers and merchants involving Debit Cards in point-of-sale transactions will also be governed by the dispute resolution rules of Visa International Inc. The bank reserves the right to include electronic transactions initiated by an ATM or Debit Card as part of any service fees which are established from time to time for various personal checking and savings accounts offered by the bank. The bank will disclose any service fees which may apply at the time you open a personal checking or savings account. The bank will give you written notice when new service fees are adopted which may affect your use of the ATM or Debit Card. The notice will be sent by regular mail to the address shown on the bank's records of your account. Other Terms Affecting Your Debit Card: A VISA card may not be used for illegal transactions. Internet gambling may be illegal in the cardholder's jurisdiction. Any violation of this policy will result in termination of these services.

**Illegal Transactions**. You may not use your ATM or Debit Card, or other access device for any illegal or unlawful transaction, and we may decline to authorize any transaction that we believe poses an undue risk of illegality or unlawfulness. Notwithstanding the foregoing, we may collect on any debt arising out of any illegal or unlawful transaction.

### ATM SAFETY TIPS

As issuers of Automated Teller Machine (ATM) access devices, we have provided for your information a list of safety precautions regarding the use of automated teller machines. Please read the following safety tips:

- Be aware of your surroundings, particularly at night.

- Consider having someone accompany you when the automated teller machine is used after dark.

- It is appropriate to politely ask someone who is uncomfortably close to you to step back before you complete your transaction.

- Refrain from displaying your cash. Pocket it as soon as your transaction is completed. Count the cash later in the safety of your locked car or home.

- Consider using another automated teller machine or coming back later if you notice anything suspicious. If you are in the middle of a transaction and you notice something suspicious, cancel the transaction, pocket your ATM access device and leave.

- Go to the nearest public area where people are located if you are followed after making a transaction.
- Report all crimes to the operator of the ATM or to law enforcement officials immediately.

**Health Savings Accounts (HSA).**

We permit you to access your HSA with a card. This service is offered for the convenience of managing your HSA. However, electronically accessing your HSA for example, getting additional cash back on an HSA debit card transaction can raise a variety of tax concerns. As a result, before electronically accessing your HSA make sure you are using the correct card. Also, it is your responsibility to ensure the contributions, distributions, and other actions related to your HSA, comply with the law, including federal tax law. As always, we recommend consulting a legal or tax professional if you have any questions about managing your HSA. The terms of this disclosure are intended to work in conjunction with the HSA Agreement provided to you earlier. In the event of a conflict, the terms of the HSA Agreement control. You understand that your HSA is intended to be used for payment or reimbursement of qualified medical expenses. It is your responsibility to satisfy any tax liability resulting from use of your HSA for any purpose other than payment or reimbursement of qualified medical expenses. We do not monitor the purpose of any transaction to or from your HSA. Nor are we responsible for ensuring your eligibility for making contributions or ensuring withdrawals are used for payment or reimbursement of qualified medical expenses. Refer to your HSA Agreement for more information relating to the use of your HSA.

Member FDIC                           Truth in Savings Disclosure                           Revised 7-6-2020

Rev. January 2021

| FACTS | WHAT DOES HEARTLAND FINANCIAL USA, INC. DO WITH YOUR PERSONAL INFORMATION? |
|---|---|
| **Why?** | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
| **What?** | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br>• Social Security number and income<br>• Account Balances and Payment History<br>• Credit History and Credit Scores |
| **How?** | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons Heartland Financial USA, Inc. chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does Heartland Financial USA, Inc. share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes –** such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes –** to offer our products and services to you | Yes | Yes |
| **For joint marketing with other financial companies** | Yes | No |
| **For our affiliates' everyday business purposes –** information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes –** information about your creditworthiness | Yes | Yes |
| **For our affiliates to market to you** | Yes | Yes |
| **For non-affiliates to market to you** | No | We don't share |

| To limit our sharing | If you want to limit sharing, please call your institution at the toll-free number listed below.<br><br>Arizona Bank & Trust 877-280-1857          Illinois Bank & Trust 877-280-1853<br>Bank of Blue Valley 877-280-1862          Minnesota Bank & Trust 877-280-1860<br>Citywide Banks 877-280-1859          New Mexico Bank & Trust 877-280-1856<br>Dubuque Bank and Trust Company 877-280-1851          Premier Valley Bank 877-280-1863<br>DB&T Insurance 877-857-6032          Rocky Mountain Bank 877-280-1858<br>FirstBank & Trust 877-280-1864          Wisconsin Bank & Trust 877-280-1855<br><br>**Please note:**<br>If you are a *new* customer, we can begin sharing your information 30 days from the date we sent this notice. When you are *no longer* our customer, we continue to share your information as described in this notice. However, you can contact us at any time to limit our sharing. |
|---|---|
| **Questions?** | If you have any questions, please call your institution at the toll-free number listed below.<br><br>Arizona Bank & Trust 877-280-1857          Illinois Bank & Trust 877-280-1853<br>Bank of Blue Valley 877-280-1862          Minnesota Bank & Trust 877-280-1860<br>Citywide Banks 877-280-1859          New Mexico Bank & Trust 877-280-1856<br>Dubuque Bank and Trust Company 877-280-1851          Premier Valley Bank 877-280-1863<br>DB&T Insurance 877-857-6032          Rocky Mountain Bank 877-280-1858<br>FirstBank & Trust 877-280-1864          Wisconsin Bank & Trust 877-280-1855 |

| Who We Are | |
|---|---|
| **Who is providing this notice?** | Heartland Financial USA, Inc. on behalf of its affiliates. |

| What We Do | |
|---|---|
| **How does Heartland Financial USA, Inc. protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. |
| **How does Heartland Financial USA, Inc. collect my personal information?** | We collect your personal information, for example, when you:<br><br>• Open an account    • Seek advice about your investments<br>• Deposit money    • Tell us about your investment or retirement portfolio<br>• Apply for a loan<br><br>We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| **Why can't I limit all sharing?** | Federal law gives you the right to limit only<br>• Sharing for affiliates' everyday business purposes — information about your creditworthiness<br>• Affiliates from using your information to market to you<br>• Sharing for nonaffiliates to market to you<br>State laws and individual companies may give you additional rights to limit sharing.<br>See below for more on your rights under state law. |
| **What happens when I limit sharing for an account I hold jointly with someone else?** | Your choices will apply to everyone on your account. |

| Definitions | |
|---|---|
| **Affiliates** | Companies related by common ownership or control. They can be financial and non-financial companies.<br>• *Our affiliates include companies with a common ownership of Heartland Financial USA, Inc. which includes financial companies such as Arizona Bank & Trust, Bankers Realty Solutions LLC, Bank of Blue Valley, Citywide Banks, Dubuque Bank and Trust Company, DB&T Insurance, FirstBank & Trust, Heartland Financial USA, Inc. Insurance Services, Illinois Bank & Trust, Minnesota Bank & Trust, New Mexico Bank & Trust, Premier Valley Bank, Rocky Mountain Bank, Wisconsin Bank & Trust.* |
| **Nonaffiliates** | Companies not related by common ownership or control. They can be financial and non-financial companies.<br>• *Heartland Financial USA, Inc. does not share with nonaffiliates so they can market to you.* |
| **Joint Marketing** | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br>• *Our joint Marketing Partners include a lifestyle benefits provider and Insurance companies.* |

## Heartland Financial USA, Inc. legal entities and businesses covered by this notice.

Financial Institutions and affiliates of Heartland Financial USA, Inc. that are providing this notice are as follows: Arizona Bank & Trust, Bankers Realty Solutions LLC, Bank of Blue Valley, Citywide Banks, Dubuque Bank and Trust Company, DB&T Insurance, FirstBank & Trust, Heartland Financial USA, Inc. Insurance Services, Illinois Bank & Trust, Minnesota Bank & Trust, New Mexico Bank & Trust, Premier Valley Bank, Rocky Mountain Bank, and Wisconsin Bank & Trust.

MEMBER FDIC



| **Other Important Information** |
|---|
| **State Laws:**<br>**Nevada Residents:** We are providing you this notice pursuant to state law. You may be placed on our internal Do Not Call List by calling the phone number listed under the To Limit Our Sharing section.<br>Nevada law requires we provide the following contact information: Bureau of Consumer Protection, Office of the Nevada Attorney General, 555 E. Washington St., Suite 3900, Las Vegas, NV 89101; Phone number is 702-486-3132; Email: BCPINFO@ag.state.nv.us.<br>**California residents:** Under California law, we will not share information we collect about you with companies outside of Heartland Financial USA, Inc. and its affiliates, unless the law allows. For example, we may share information with your consent, to service your accounts, or to provide rewards or benefits you are entitled to. We will limit sharing among our companies to the extent required by California Law.<br>**Texas Residents:** FirstBank & Trust and our affiliates are chartered under the laws of the State of Texas and by state law is subject to regulatory oversight by the Texas Department of Banking. Any consumer wishing to file a complaint against FirstBank & Trust should contact the Texas Department of Banking through one of the means indicated below:<br>In person or U.S. Mail: Texas Department of Banking, 2601 N. Lamar Boulevard, Suite 300, Austin TX, 78705-4294; By telephone: (877) 276-5554; By fax: (512) 475-1313; By email: consumer.complaints@dob.texas.gov; Through a website: www.dob.texas.gov. |

MEMBER FDIC

